2008 OK 35

**Jean VASEK, Appellant,**

v.

**BOARD OF COUNTY COMMISSIONERS OF NOBLE COUNTY, Appellee.**

No. 103,580.

Supreme Court of Oklahoma.

April 15, 2008.

Rick Bisher & David Hood, Ryan Bisher Ryan, Oklahoma City, for Appellant.

Jodi Casey, Collins Zorn & Wagner, P.C., Oklahoma City, for Appellee.

COLBERT, J.

¶ 1 In this action for wrongful termination from employment, the issue is whether summary judgment was properly granted to the defendant employer. This Court holds that the former employee stated a claim for wrongful termination sufficient to survive summary judgment and the lower courts erred in holding to the contrary. They further erred in finding no dispute as to any issue of material fact. The opinion of the Court of Civil Appeals is vacated and the trial court's summary judgment is reversed. This matter is remanded to the trial court for a determination of the jury question of whether retaliation was a significant factor in the employer's decision to terminate the plaintiff's employment.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Jean Vasek (Plaintiff) was employed as a deputy court clerk from January 29, 1981, until she was discharged on July 13, 2001, by the Noble County Court Clerk, Marilyn Mills. There had been a recurring problem with prisoners flooding the jail on the fourth floor of the Noble County courthouse which in turn caused flooding and water damage to the court clerk's office located beneath the jail on the third floor. On October 4, 2000, one such incident occurred.

¶ 3 Following that event, two anonymous complaints were made to the Department of Labor (DOL) in which concern was expressed about mold and a sewer smell at the courthouse. On October 18, 2000, an inspector from the DOL made an unannounced visit to inspect the courthouse. The safety coordinator for the courthouse, one of the county commissioners, was not present. An administrative assistant for the commissioners, Pamela Wilda, accompanied the inspector during his inspection.

¶ 4 An internal memorandum to the DOL file concerning the Noble County courthouse states that, when the inspector arrived at the Court Clerk's office, "Ms. Mills was very aggressive and combative and demanded to know who notified him of the problem." The same memorandum indicates that Ms. Mills called the DOL two days later to complain that the inspector had been "evasive and would not answer her questions about why he was onsite." The flooding and DOL inspection was reported in the local newspaper. An emergency requisition for an "environmental cleanup" was approved by the county commissioners and a private contractor performed the work.

¶ 5 Mills never discussed the DOL complaint with Plaintiff. In Mill's deposition she stated that she did not know who had made contact with the DOL until Plaintiff brought this wrongful termination action. According to Plaintiff, however, Mills became distant toward Plaintiff after the DOL inspection. Plaintiff was fired about nine months after the DOL complaint.[1] No reason was given for the termination but when Plaintiff sought and received unemployment benefits she was informed that the county had opposed the benefits asserting that the termination was for "insubordination and habitual tardiness."

¶ 6 Employer asserts that Plaintiff was insubordinate in leaving her post without following Mill's standing directive to first clear such absence with herself or the acting supervisor. Plaintiff maintains that while Mills was not in the office and the acting supervisor was busy with a phone call she left the office and went across the street to have her bifocal glasses adjusted. Plaintiff states she was gone for about ten minutes. She admits that she did not check with the acting supervisor but did tell a coworker where she was going. Employer also asserts that Plaintiff was habitually tardy. Plaintiff's personnel file lists two warnings concerning tardiness in 1988 and one in each year for 1989, 1995, and 1996.

¶ 7 Plaintiff brought this action for wrongful termination on February 25, 2003, assert-

---

1. Plaintiff's discharge followed the April 16, 2001, discharge of Pamela Wilda, the other county employee, a registered nurse, who had voiced concerns about exposure to mold. Wilda's discharge generated a wrongful termination action. That action was dismissed with prejudice on May 13, 2004.

ing that she was actually fired for making a complaint to the DOL concerning mold at the courthouse. She asserted that as a whistleblower she was entitled to the protection an at-will worker receives from employment termination which violates Oklahoma's public policy citing *Burk v. K–Mart Corp.*, 1989 OK 22, 770 P.2d 24. Employer moved for summary judgment.

¶ 8 The trial court granted Employer's motion holding that Plaintiff's claim was legally and factually insufficient to overcome summary judgment. The trial court reasoned that Plaintiff's employment was not at-will, rather it was "statutory" and thus she did not fall within the rule in *Burk.* That court further reasoned that the two sources of public policy asserted by Plaintiff, the Oklahoma Occupational Health and Safety Standards Act, Okla. Stat. tit. 40, §§ 401–435 (2001 & Supp.2007), and the Oklahoma Personnel Act, Okla. Stat. tit. 74, §§ 840–1.1 through 840–7.1 (2001 & Supp.2007), did not apply to her and therefore could not provide a statement of Oklahoma policy for her *Burk* claim. At the hearing on the motion for summary judgment, the trial court mentioned with favor Employer's argument that Plaintiff had an adequate federal statutory remedy in section 1983 of title 42 of the United States Code, but the trial court did not rely on the argument for its decision. Finally, the trial court determined that "Plaintiff has failed to establish that a substantial controversy exists as to whether the Plaintiff's actions, in contacting the Department of Labor, were a significant motivating factor in the employer's decision to terminate Plaintiff's employment." It then concluded that "there [was] no material issue of fact sufficient to overcome summary judgment."

¶ 9 The Court of Civil Appeals affirmed on Employer's argument that section 1983 provided an adequate statutory remedy for Plaintiff and thus, *Burk* was inapplicable. It also concluded that the evidentiary materials attached to the motion for summary judgment and the response to that motion demonstrated no substantial controversy.

## STANDARD OF REVIEW

¶ 10 Summary judgments are reviewed de novo. *Brown v. Nicholson,* 1997

OK 32, ¶ 5, 935 P.2d 319, 321. Summary judgment is appropriate when there is no dispute as to material facts or any inferences drawn from undisputed facts and the law favors the movant's claim or liability defeating defense. *Myers v. Lashley,* 2002 OK 14, ¶ 18, 44 P.3d 553, 561.

¶ 11 The trial court in this matter held that "Plaintiff's cause of action fails as a matter of law" and that "there [was] no material issue of fact to overcome summary judgment." Therefore, both the legal and factual aspects of the summary judgment must be addressed.

## THE LEGAL DISPUTE

¶ 12 In *Burk v. K–Mart Corp.*, 1989 OK 22, 770 P.2d 24, this Court "recognized an actionable common-law tort for an at-will employee's discharge in contravention of a clear mandate of public policy." *Darrow v. Integris Health, Inc.,* 2008 OK 1, ¶ 6 n. 8, 176 P.3d 1204, 1208 n. 8. *Burk* explained that the "tightly circumscribed" exception to the employment at will doctrine applies "where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." 1989 OK 22, ¶ 19, 770 P.2d at 29. "Only a specific Oklahoma court decision, state legislative or constitutional provision, or a provision in the federal constitution that prescribes a norm of conduct for the state can serve as a source of Oklahoma's public policy." *Darrow,* 2008 OK 1, ¶ 13, 176 P.3d at 1212 (emphasis omitted).

¶ 13 "While a federal statute cannot by itself serve as a statement of Oklahoma policy, a federal statutory remedy may be as effective as an Oklahoma statutory remedy in dissuading employers from discharging employees for reasons that violate Oklahoma public policy." *Clinton v. State ex rel. Logan County Election Bd.,* 2001 OK 52, ¶ 9, 29 P.3d 543, 546. In addition, "to support a viable tort claim the public policy must truly be public, rather than merely private or proprietary." *Hayes v. Eateries, Inc.,* 1995 OK 108, ¶ 24, 905 P.2d 778, 787. Thus, "to distin-

guish whistleblowing claims that would support a viable common-law tort claim from those that would not, the public policy breached must truly impact public rather than the employer's private or simply proprietary interests." *Darrow*, 2008 OK 1, ¶ 16, 176 P.3d at 1214 (footnote omitted).

¶ 14 The elements of a claim for wrongful discharge of an at-will employee articulated in *Burk* and its progeny can be summarized. A viable *Burk* claim must allege (1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal. *See McCrady v. Okla. Dept. of Pub. Safety*, 2005 OK 67, ¶ 9, 122 P.3d 473, 475; *See also Darrow*, 2008 OK 1, ¶¶ 9–19, 176 P.3d at 1210–16.

¶ 15 In this matter, the trial court held Plaintiff's claim to be legally deficient on two bases, the "at-will employee" and the "Oklahoma public policy goal" elements. The trial court erred in its legal analysis of both elements.

¶ 16 In its order of summary judgment, the trial court held that Plaintiff's "cause of action fails, as a matter of law, as the Plaintiff is not a contractual employee, but instead a statutory employee." The source of this contractual/statutory distinction appears to have been the argument of Employer's counsel. No such distinction is found in any appellate decision regarding wrongful discharge. It appears that Employer derived the term "contractual employee" from *Burk's* statement of "the basic principal that an employment contract of indefinite duration may be terminated without cause at any time without incurring liability for breach of contract." 1989 OK 22, ¶ 5, 770 P.2d at 26. This is a statement of the employment-at-will rule for which *Burk* adopted a public policy exception. Therefore it appears that by counsel's use of the term "contractual employee" he was referring to an "at-will employee."

¶ 17 Employer appears also to have reasoned that Plaintiff was a "statutory employee" because the appointment of deputy court clerks is authorized by section 162 of title 19 of the Oklahoma Statutes. Thus, under Employer's analysis, Plaintiff's employment status would have been that of a public officer. However, that analysis is flawed. Section 161(1) of title 19 provides that " '[c]ounty officer' means the county clerk, county commissioner, county assessor, district court clerk, county treasurer and county sheriff." Section 161(2) provides that " '[d]eputy' means one or more regular employees appointed to assist a county officer in the performance of the official duties of the county officer."

¶ 18 This matter was clearly brought by an employee, not a county officer. The fact that a statute authorized her employment makes her a "public employee," but that does not alter her status as an at-will employee. For example, this Court has held that state employees who are classified, and thus under the jurisdiction of the Oklahoma Merit System of Personnel Administration, are not at-will employees and may not bring a *Burk* claim while unclassified employees serve at the pleasure of their employers and are considered at-will employees. *McCrady*, 2005 OK 67, ¶ 10, 122 P.3d at 475. Plaintiff served at the pleasure of the district court clerk and was an at-will employee. As such, she could be discharged "for any reason or no reason" without Employer incurring liability. *Id.* ¶ 6, 122 P.3d at 475. However, Employer cannot avoid a *Burk* claim, if her discharge was motivated in significant part by a reason that conflicts with an Oklahoma public policy goal. The trial court erred when it equated Plaintiff's employment status with that of a county officer.

¶ 19 Employer also challenged Plaintiff's claim on the "public policy goal" element. Employer argued successfully that Plaintiff's claim must fail because her asserted sources of an Oklahoma public policy goal "did not apply" to her and could not therefore provide the basis of her *Burk* claim.

¶ 20 "[A]n employer's violation of a state-declared public policy is the funda-

mental predicate for a *Burk* tort." *Darrow,* 2008 OK 1, ¶ 10, 176 P.3d at 1210 (footnote omitted). "The implication of a sufficiently discernable public policy presents a question of law to be resolved either [by the trial court] or ultimately by an appellate court." *Id.* ¶ 9, 176 P.3d at 1210 (footnote omitted).

¶ 21 In her response to Employer's motion for summary judgment, Plaintiff asserted that "[h]ere the public policy is quite clear-notification, removal and prevention of mold in a public courthouse. It is obviously important to have our State's public buildings free of possible health hazards." She argued that the Oklahoma Occupational Health and Safety Standards Act (OOHSSA), Okla. Stat. tit. 40, §§ 401–435 (2001 & Supp.2007), is one source of that policy. She also argued that she was entitled to the same protection from discharge for whistle-blowing activity that is provided to state employees by the Oklahoma Personnel Act, Okla. Stat. tit. 74, §§ 840–1.1 through 840–7.1 (2001 & Supp.2007). Together, she argued, the two acts express the policy of maintaining the health and safety of those who work in public buildings and the policy against discharging workers for reporting health and safety violations. The trial court rejected the asserted sources of an Oklahoma public policy goal "[a]s the Plaintiff is not covered under either statutes [and thus] there is no basis for a *Burk* [sic] tort." This Court's recent decision in *Darrow* is instructive.

¶ 22 In *Darrow,* this Court noted that "Oklahoma law protects both *internal* and *external* reporting of whistleblowers who rely on an employer's public-policy violation to support an actionable employment termination." 2008 OK 1, ¶ 19, 176 P.3d at 1215 (footnote omitted). "Employees who report and complain of an employer's unlawful or unsafe practices and whose actions seek to further public good by unmasking these breaches should be protected from an employer's retaliation." *Id.* ¶ 19, 176 P.3d at 1216 (footnote omitted).

¶ 23 Plaintiff alleged she was discharged in retaliation for reporting unhealthy conditions in a public building that affected employees and the public. OOHSSA provides that "[e]ach employer shall furnish to each of [its] employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to [its] employees, commensurate with [this Act]." *Id.* § 403(A). OOHSSA defines "employer" as "the state and all its political subdivisions which has in its employ one or more individuals performing services for it in employment." *Id.* § 402(1). "Employee" is defined as "a person permitted to work by an employer in employment." *Id.* § 402(2). The Commissioner of Labor administers and enforces the Act, *Id.* § 410, and the failure to comply with the Act is a misdemeanor. *Id.* § 412.

¶ 24 OOHSSA contains the following statement of public policy which applies specifically to the conduct that forms the basis of Plaintiff's *Burk* claim: "No person shall discharge, discriminate or take adverse personnel action against any employee because such employee has filed any complaint, or instituted or caused to be instituted any proceeding under or related to this act." *Id.* § 403(B). No statutory remedy is provided for an employer's violation of the provision.

¶ 25 It is difficult to imagine a statement of public policy more specific or more applicable to the conduct Plaintiff alleged. The whistleblower provision of OOHSSA mirrors the "Whistleblower Act" which provides internal and external whistleblower protection to classified and unclassified state employees. Okla. Stat. tit. 74, § 840–2.5 (Supp.2007). That protection includes the reporting of "a substantial and specific danger to public health or safety." *Id.* § 840–2.5(B)(2). Thus, the OOHSSA whistleblower provision extends similar protection to the employees of the state's political subdivisions and includes county employees such as Plaintiff.

¶ 26 Another argument was presented which the trial court did not rely upon in granting the Employer's motion for summary judgment. However, the transcript of counsels' argument indicates that the trial court believed that a *Burk* action might be unavailable to Plaintiff because she may have been able to bring a federal section 1983 action for

abridgment of her First Amendment right of free speech. The Court of Civil Appeals affirmed the trial court's holding that Plaintiff's claim was legally insufficient based solely on that argument. However, Employer's claimed availability of a section 1983 action does not address or protect the Oklahoma public policy goal advanced by Plaintiff's whistleblowing.

¶ 27 The question is not, and never has been, merely whether a discharged at-will employee could possibly pursue a statutory remedy. The question is whether "a statutory remedy exists that is sufficient to protect the Oklahoma public policy goal." *McCrady,* 2005 OK 67, ¶ 9, 122 P.3d at 475. Under Employer's view, *every* whistleblower *Burk* claim would be barred by the potential for a section 1983 remedy based on the whistleblower's right of free speech. Section 1983, however, is not a federal statutory remedy that sufficiently protects the Oklahoma policy goal of reporting unsafe or unhealthy conditions in public buildings. It is not an impediment to Plaintiff's claim of wrongful discharge.

¶ 28 Plaintiff has established that she was an at-will employee who was allegedly discharged in contravention of the statutorily stated Oklahoma public policy goal of protecting whistleblowers for reporting an unsafe or unhealthy condition in a public building and that there is no statutory remedy sufficient to protect that Oklahoma public policy goal. The remaining question is whether there are material facts in dispute which require a determination by the trier of fact.

### THE FACTUAL DISPUTE

¶ 29 "A party may move for either summary judgment or summary disposition of any issue on the merits on the ground that the evidentiary material filed with the motion or subsequently filed with leave of court show that there is no substantial controversy as to any material fact." Rules for the District Courts, Okla. Stat. tit. 12, ch. 2, app., Rule 13a (Supp.2007). "If it appears to the court that there is no substantial controversy as to the material facts and that one of the parties is entitled to judgment as a mat-

ter of law, the court shall render judgment for said party." *Id.* at Rule 13e. "All inferences in the evidence must be taken in favor of the party opposing the motion [and][s]ummary judgment is improper if under the evidence, reasonable [minds] could reach different conclusions from the facts." *Indiana Nat'l Bank v. State Dept. of Human Servs.,* 1993 OK 101, ¶ 10, 857 P.2d 53, 60 (citations omitted). Thus, where reasonable minds could reach different conclusions from undisputed facts, the factual issue is a jury question.

¶ 30 The issue of Employer's intent in discharging Plaintiff presents the central and dispositive issue of fact in this controversy. If, from the evidentiary materials attached to the motion for summary judgment and the response, reasonable minds could reach differing conclusions as to whether Plaintiff's call to the DOL was a "significant factor" in her discharge, then the issue of retaliatory intent is a jury question. *See* Okla. Uniform Jury Instructions (Civil), No. 21.9.

¶ 31 The trial court held that Plaintiff "failed to establish that a substantial controversy exists as to whether the Plaintiff's actions in contacting the Department of Labor were a significant factor in the employer's decision to terminate Plaintiff's employment." In doing so, the trial court failed to appreciate that, although the evidence presented as to each particular fact may not have been disputed, reasonable minds could certainly disagree as to what should be inferred from those facts. Plaintiff was entitled to the reasonable inference that retaliation was a significant factor in Employer's decision to discharge her from employment and to have that issue determined by a jury.

### CONCLUSION

¶ 32 In this matter, the trial court erred in its holding that Employer was entitled to summary judgment as a matter of law. It further erred in its finding that the matter presented no disputed issue of fact. The matter must be remanded for trial of the issue of whether retaliation was a significant factor in Plaintiff's discharge.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF CIVIL APPEALS VACATED; TRIAL COURT'S SUMMARY JUDGMENT REVERSED; CAUSE REMANDED.

EDMONDSON, V.C.J.; OPALA, KAUGER, WATT, COLBERT, JJ., concur.

WINCHESTER, C.J.; HARGRAVE, TAYLOR, JJ., dissent.

REIF, J., disqualified.