2009 OK 25

**Susan SHEPHARD, Plaintiff/Appellant,**

v.

**COMPSOURCE OKLAHOMA and Joe Dane Johnson, Respondents/Appellees.**

**No. 104,865.**

Supreme Court of Oklahoma.

April 28, 2009.

Mark Hammons and Amber L. Hurst, Hammons, Gowens & Associates, Oklahoma City, OK, for Plaintiff/Appellant.

Joseph Walters and Paul A. Ross, McAfee & Taft, Oklahoma City, OK, for Defendants/Appellees.

REIF, J.:

¶1 The issues presented on certiorari review are (1) whether the State Whistleblower Act, 74 O.S. Supp.2008 § 840–2.5, provides an adequate remedy to protect unclassified state employees from wrongful termination and (2) whether the Governmental Tort Claims Act, 51 O.S.2001 and Supp.2008 §§ 151 et seq., shields supervisors from personal liability when the employer State agency ratifies the supervisor's decision to terminate an employee. These issues arise from a suit brought by Unclassified State Employee Susan Shephard against CompSource Oklahoma, her former employer, and Joe Dane Johnson, her supervisor at CompSource. Employee Shephard contends that she was terminated by Supervisor Johnson after she reported false travel claims. Employee Shephard sought to hold CompSource liable in tort for wrongful termination in violation of the State Whistleblower Act and to hold Supervisor Johnson personally liable for tortious interference with her employment with CompSource.

¶2 In summary judgment proceedings, Employee Shephard presented evidentiary material to support her claim that CompSource and Supervisor Johnson wrongfully terminated her for reporting illegal travel claims. In response, CompSource and its Supervisor offered uncontroverted evidentiary material showing (1) Employee Shephard began, but did not complete, the appeal process to challenge her termination as provided in the Whistleblower Act, and (2) CompSource ratified its Supervisor's decision to terminate Employee Shephard. Both the trial court and Court of Civil Appeals concluded these latter facts precluded liability on the part of CompSource and Supervisor as a matter of law. Both the trial court and Court of Civil Appeals ruled the Whistleblower Act provided Employee Shephard an adequate remedy that precluded a tort cause of action and CompSource's ratification shielded Supervisor from personal liability.

### I.

¶3 We will first consider whether the State Whistleblower Act provides an adequate remedy to protect state employee whistleblowers from wrongful termination. Determinations of the public policy protecting employees from wrongful termination and the adequacy of remedy are questions of law to be resolved by this Court. *McCrady v. Department of Public Safety,* 2005 OK 67, ¶9, 122 P.3d 473, 475. In cases in which a plaintiff's conduct, like whistleblowing, is alleged to have triggered a discharge in violation of Oklahoma public policy, a court must determine whether available remedies are sufficient to protect Oklahoma's public policy goals. *Kruchowski v. The Weyerhaeuser Co.,* 2008 OK 105, ¶25, 202 P.3d 144, 152. This is the test for deciding whether this type of plaintiff (*i.e.* conduct based discharge) has an adequate remedy in lieu of a *Burk [v. K–Mart Corp.,* 1989 OK 22, 770 P.2d 24] tort. *Id.*

¶4 The Legislature has declared that "[t]he purpose of the Whistleblower Act is to encourage and protect the reporting of wrongful governmental activities and to deter retaliation against state employees for reporting those activities." 74 O.S. Supp.2008 § 840–2.5(A).[1] State employees covered by the Act include those in unclassified service.

---

1. 74 O.S. Supp.2008 § 840–2.5(A) provides in pertinent part:

This section shall be known and may be cited as the "Whistleblower Act". The purpose of the

74 O.S. Supp.2008 § 840–2.5(B).[2] The "wrongful governmental activities" that state employees are protected in reporting include "a violation of the Oklahoma Constitution, state or federal law, rule or policy; mismanagement; a gross waste of public funds; an abuse of authority; or a substantial and specific danger to public health or safety." *Id.* "Mismanagement" is further defined to mean "fraudulent activity, criminal misuse of funds or abuse or violation of a well-established, articulated, clear and compelling public policy." 74 O.S. Supp.2008 § 840–2.5(E).[3] Clearly, Employee Shephard and her alleged reporting of illegal travel claims are covered by the Whistleblower Act.

¶ 5 In addition to prohibiting officers and employees of state agencies from taking disciplinary action against whistleblowers, the Legislature has provided two measures to ensure the purpose of the Whistleblower Act is carried out generally and in specific cases. The Legislature has provided (1) an appeal with the Oklahoma Merit Protection Commission to any state employee or former state employee aggrieved pursuant to this section, and (2) corrective action against any employee found to have violated the Whistleblower Act. 74 O.S. Supp.2008 § 840–2.5(G) and (H).[4]

¶ 6 These dual remedies provide relief to the offended employee and sanctions for the

---

Whistleblower Act is to encourage and protect the reporting of wrongful governmental activities and to deter retaliation against state employees for reporting those activities. No conviction of any person shall be required to afford protection for any employee under this section.

**2.** 74 O.S. Supp.2008 § 840–2.5(B) provides in pertinent part:

For purposes of this section, "agency" means any office, department, commission or institution of the state government. No officer or employee of any state agency shall prohibit or take disciplinary action against employees of such agency, whether subject to the provisions of the Merit System or in **unclassified service,** for:
1. Disclosing public information to correct what the employee reasonably believes evidences a violation of the Oklahoma Constitution or law or a rule promulgated pursuant to law;
2. Reporting a violation of the Oklahoma Constitution, state or federal law, rule or policy; mismanagement; a gross waste of public funds; an abuse of authority; or a substantial and specific danger to public health or safety;
3. Discussing the operations and functions of the agency, either specifically or generally, with the Governor, members of the Legislature, the print or electronic media or other persons in a position to investigate or initiate corrective action; or
4. Taking any of the above actions without giving prior notice to the employee's supervisor or anyone else in the employee's chain of command.

**3.** 74 O.S. Supp.2008 § 840–2.5(E) provides in pertinent part:

1. "Disciplinary action" means any direct or indirect form of discipline, any dismissal, demotion, transfer, reassignment, suspension, reprimand, admonishment, warning of possible dismissal, reduction in force, reduction in rank, reduction in status, or withholding of work;
2. "Probation" means that period of time, after an officer or employee is found to have violated the provisions of this section and corrective action is ordered, during which time that officer's

or employee's performance and conduct is being monitored by the employing agency for further violations of the Oklahoma Personnel Act; and
3. "Mismanagement" means fraudulent activity, criminal misuse of funds or abuse or violation of a well-established, articulated, clear and compelling public policy.

**4.** 74 O.S. Supp.2008 § 840–2.5(G) and (H) provide in pertinent part:

G. Any state employee or former state employee aggrieved pursuant to this section, or any authorized third-party state employee who has actual knowledge of the discipline or retaliatory act taken against the whistleblower, may file an appeal with the Oklahoma Merit Protection Commission within sixty (60) days of the alleged violation. The Oklahoma Merit Protection Commission shall promulgate rules to establish procedures for the conduct of investigations. If, after investigation, the Executive Director determines a violation of this section may have occurred, the Executive Director shall appoint an administrative law judge to hear the case as provided for in Section 840–6.6 of this title. H. If, after the hearing, it is determined that a violation has occurred, the Commission or administrative law judge shall order corrective action pursuant to Section 840–6.6 of this title. Such corrective action shall include, but not be limited to, suspension without pay, demotion or discharge. Any employee found to have violated this section of law, in addition to being suspended or demoted, shall be placed on probation for six (6) months. Such probation shall commence on the date of the final decision filed by the Commission. Any employee who is determined to have violated the Oklahoma Personnel Act, Section 840–1.1 et seq. of this title, while serving said probation shall forfeit the position of the person for one (1) year. Any employee, supervisor or appointing authority of any state agency, whether subject to the provisions of the Merit System of Personnel Administration or in unclassified service, who knowingly and willfully vio-

offending supervisor or agency official. Relief provided to the whistleblower on appeal to the Merit Protection Commission includes (1) reinstatement, (2) back pay and other benefits in appropriate cases, and (3) expungement of the adverse action from any and all of the employee's personnel records. Okla. Admin. Code 455:10–9–2(f)(1)(B). A prevailing employee can also be awarded attorney fees and costs when the employee can demonstrate by a preponderance of the evidence that the position of the non-prevailing party was without reasonable basis or was frivolous. Okla. Admin. Code 455:10–15–1. The sanctions that the Merit Protection Commission can visit on an offending supervisor or agency official are set forth in subsection (G) of the Whistleblower Act.[5]

■ ¶ 7 Significantly, the Legislature did not authorize a private right of action for the enforcement of the Whistleblower Act. Because the Legislature omitted a private right of action to enforce the policy in the Whistleblower Act, we conclude the remedies it provided in the Act were sufficient to protect the statutory public policy.

¶ 8 In reaching this conclusion, this Court is mindful that unclassified state employees are at-will employees. *McCrady*, 2005 OK 67 at ¶ 10, 122 P.3d at 475. This Court is also mindful we have recently held that a *Burk* tort cause of action was a proper remedy for wrongful termination of an at-will employee whistleblower in violation of a statutory public policy prohibiting such termination. *Vasek v. Board of County Commissioners of Noble County*, 2008 OK 35, ¶ 28, 186 P.3d 928, 934.[6]

¶ 9 Even though the *Vasek* case and the case at hand both involve statutory public policy prohibiting the termination of whistleblowers, the *Vasek* case recognized a *Burk* tort as a proper remedy because "there is no statutory remedy sufficient to protect th[e] Oklahoma public policy goal [of protecting employees who report violations of the Oklahoma Occupational Health and Safety Standards Act.]." *Vasek*, 2008 OK 35, ¶ 18, 186 P.3d at 932. Unlike the *Vasek* case, the Whistleblower Act does provide statutory remedies sufficient to protect the Oklahoma public policy goal of protecting employees who report the wrongful governmental activities.

¶ 10 In reaching this conclusion this Court is also mindful of our recent holding in *Kruchowski* which addressed the disparate treatment of victims of status based discrimination under federal and state anti-discrimination acts. The disparity in question was that victims of handicap discrimination were afforded a private right of action, but victims of race, gender and age discrimination were not. This Court held that these status based groups constituted a unified class and must, therefore, be afforded commensurate remedies. This Court made it clear, however, that the commensurate remedy rule was limited to resolving the disparate treatment of victims of status based discrimination. This Court specially noted that it did not apply to cases in which a plaintiff's conduct, like whistleblowing, is alleged to have triggered a discharge. *Kruchowski* expressly reaffirms that the "adequacy of remedies" for whistleblowers is to be decided under the sufficiency test of *Vasek*, which in turn applied *McCrady*.

¶ 11 The principles of *Kruchowski* were subsequently reaffirmed in *Shirazi v. Childtime Learning Center, Inc.*, 2009 OK 13, ¶ 12,

lates the provisions of this section shall forfeit the position of the person and be ineligible for appointment to or employment in a position in state service for a period of at least one (1) year and no more than five (5) years. The decision of the Commission in such cases may be appealed by any party pursuant to Article II of the Administrative Procedures Act.

5. See note 4, supra.

6. The *Vasek* case dealt with section 403(B) of the Oklahoma Occupational Health and Safety Standards Act, 40 O.S.2001 and Supp.2007 §§ 401 through 435. This section prohibits discharge of

any employee who files a complaint or institutes a proceeding under the Act. This Court directed the parties in the case at hand to do supplemental briefing concerning the application of the *Vasek* case in determining whether Ms. Shephard had an adequate remedy under the Whistleblower Act. Because *Vasek* represents this Court's most recent pronouncement in the area of whistleblowing activity, Ms. Shephard's claim was examined thereunder, rather than *Tate v. Browning–Ferris, Inc.*, 1992 OK 72, 833 P.2d 1218, as argued by the parties below.

204 P.3d 75, 79. This case again said "the same remedies must be applicable to everyone within the same class of employment discrimination [which] includes race, color, religion, sex, national origin, age, and handicap." While *Shirazi* clearly abandons the adequacy of the remedies test in cases of wrongful termination involving status based discrimination, it does not depart from *Kruchowski's* recognition of the test in *Vasek:* "Were the remedies available to the plaintiff sufficient to protect Oklahoma's public policy goals?" *Kruchowski,* 2008 OK 105, ¶ 25, 202 P.3d at 152. Again, this test applies in "cases in which a plaintiff's conduct is alleged to have triggered a discharge or constructive discharge in violation of Oklahoma public policy." *Id.*

¶ 12 Where a statutory remedy exists that is sufficient to protect the Oklahoma public policy goal, an employee has an adequate remedy that precludes resort to a tort cause of action to redress a termination in violation of the public policy. *McCrady,* 2005 OK 67 at ¶ 9, 122 P.3d at 475.[7] Accordingly, summary judgment was properly rendered in favor of CompSource on Employee Shephard's wrongful termination claim.

## II.

¶ 13 We next consider whether Supervisor was shielded from personal liability by CompSource's ratification of his decision to terminate Employee Shephard. The effect of such ratification is a question of law in the context of the summary judgment record presented.

¶ 14 Ratification is defined as the giving of sanction and validity to something done by another. *Woodruff v. Woodruff,*

1951 OK 368, 206 Okla. 3, 240 P.2d 74, 78. In cases involving allegedly tortious acts or decisions by employees of governmental entities, ratification occurs in the course of the claim review process provided by the Governmental Tort Claims Act, 51 O.S.2001 and Supp.2008 §§ 151 through 200. In review of a claim, the governmental entity must decide whether the alleged tort-feasor employee has acted within the scope of employment. 51 O.S.2001 § 157. This determination is a predicate to the defense of the employee. 51 O.S.2001 § 162(A)(1). The case of *Wilson v. City of Tulsa,* 2004 OK CIV APP 44, 91 P.3d 673, discusses the effect of a governmental entity ratifying a decision to terminate an employee that was contrary to a policy forbidding the termination.

¶ 15 In *Wilson,* the police officer sought to hold the police chief personally liable for terminating the officer in violation of a policy forbidding the termination. The police officer contended that the police chief acted outside the scope of his employment.

¶ 16 The court observed that this alleged wrongful termination and tortious interference with the police officer's employment fell under the Governmental Tort Claims Act. The court also observed that the police chief could not be held personally liable if the chief was operating within the scope of employment; that is, acting in good faith and within the duties of the employee's office and performing tasks lawfully assigned. In contrast, the court noted that acts undertaken with malice or in bad faith are not within the scope of employment. Also, acts contrary to the interests of the employer are not within the scope of employment. *See Martin v.*

---

7. In the *McCrady* case, this Court rejected the effort of a classified state employee to bring a *Burk* tort cause of action to redress his termination. In refusing to extend the *Burk* tort to classified employees, this Court observed that "the Oklahoma Personnel Act provides adequate remedy to [classified employee] sufficient to protect him and the identified public policy goals of Oklahoma." *McCrady,* 2005 OK 67 at ¶ 12, 122 P.3d at 476. Again, unclassified employees are accorded the same protections of the Oklahoma Personnel Act as classified employees for activity covered by the Whistleblower Act, unless they are employed by officers, departments, and insti-

tutions of the state government that are granted constitutional authority to manage their respective affairs. Unclassified state employees in this latter category are excepted from merit protection jurisdiction. *See State ex rel. Bd. of Regents of Oklahoma State University v. Oklahoma Merit Protection Commission,* 2001 OK 17, 19 P.3d 865; *Workers' Compensation Court v. Merit Protection Commission,* 1993 OK 145, 863 P.2d 1226; and *Bennett v. State,* 1991 OK 99, 849 P.2d 391. Under *Vasek,* unclassified employees of constitutional officers, departments and institutions would have a *Burk* tort.

*Johnson,* 1998 OK 127, ¶ 32, 975 P.2d 889, 896–97.

¶ 17 In deciding that the police chief remained within the scope of his employment, the court emphasized the fact that the City admitted the police chief was acting within the course and scope of his employment and never sought to escape its potential liability for the police chief's actions. In other words, the City ratified the police chief's decision and established prima facie that the police chief acted in good faith and did not act contrary to the City's interests.

¶ 18 The court noted that the fact the police chief terminated the officer in violation of a policy forbidding the termination did not alone take the police chief outside the scope of his employment. The court said "[a]cting in good faith and using poor judgment are not mutually exclusive and, the use of poor judgment does not, without more, exceed the scope of employment." The court further observed that a decision cannot be characterized as malicious or in bad faith based only on the fact of the interference with the employment contract. The court stated that where a summary judgment record is devoid of other evidence regarding the alleged tortfeasor's intentions toward the terminated employee, there is no legal basis for concluding the employee who made the termination decision acted outside the scope of his employment.

■ ¶ 19 The summary judgment record in the case at hand is likewise devoid of any evidentiary material regarding the Supervisor's malicious or bad faith intentions toward Employee Shephard. The fact that Supervisor's decision to terminate Employee Shephard was contrary to policy prohibiting the termination does not alone take that decision outside the scope of Supervisor's employment.

¶ 20 The Legislature has provided immunity for the state employees acting within the scope of their employment. 51 O.S.2001 § 152.1(A). This immunity relieves the state employees of private liability for tortious conduct and allows them to perform their duties and make decisions on behalf of the State free from fear of suit. *Anderson v. Eichner,* 1994 OK 136, ¶ 10, 890 P.2d 1329, 1336. The State assumes liability for loss resulting from the torts of its employees acting within the scope of their employment and such liability is exclusive and in place of all other liability of an employee at common law or otherwise. 51 O.S.2001 § 153.

■ ¶ 21 The summary judgment record in the case at hand reveals the want of evidentiary material to support the element of "bad faith" on the part of Supervisor that is required to breach the shield of statutory immunity and impose liability for tortious interference with contractual relations. Where the summary judgment record demonstrates want of a material element of a plaintiff's claim, summary judgment is properly rendered for the defendant. *Manley v. Brown,* 1999 OK 79, ¶¶ 23–33, 989 P.2d 448, 456–58.

### III.

¶ 22 In conclusion, we hold that even if Supervisor terminated Employee Shephard for reporting false travel claims, and this reason violated the State Whistleblower Act, this decision was ratified by CompSource. CompSource's ratification of this decision establishes prima facie that Supervisor acted within the scope of his employment and that he is entitled to immunity from personal liability as provided in the Governmental Tort Claims Act, particularly in the absence of evidentiary material that Supervisor acted with malice or bad faith. Under the Governmental Tort Claims Act, CompSource bears any tort liability for the termination decision. However, Employee Shephard cannot maintain a tort cause of action against CompSource for a termination decision in violation of the Whistleblower Act, because the Whistleblower Act provides adequate remedies to redress violations of the Act and "sufficient to protect Oklahoma's public policy goals" expressed in the Act. Consequently, summary judgment was properly entered in favor of CompSource and Supervisor, and that summary judgment is **AFFIRMED.**

¶ 23 EDMONDSON, C.J., HARGRAVE, OPALA, KAUGER, WINCHESTER, COLBERT, and REIF, JJ., concur.

¶ 24 TAYLOR, V.C.J., concurs in result.

¶ 25 WATT, J., dissents.