**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARCIA MUHAMMAD,

     Plaintiff - Appellant,

v.

MYLISSA HALL, in her individual
capacity,

     Defendant - Appellee.

No. 16-6046
(D.C. No. 5:15-CV-00059-R)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **PHILLIPS** and **McHUGH**, Circuit Judges.
_____

Marcia Muhammad appeals from the district court's Fed. R. Civ. P. 12(b)(6) dismissal of her civil rights lawsuit concerning her non-selection for a teaching position. She also appeals from the district court's denials of her post-judgment motions to reopen and to amend her complaint. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

After losing her job as an assistant principal, Ms. Muhammad raised allegations of academic fraud and sued the school district. Later, she applied for a teaching position at another school in the same district, whose principal was Mylissa Hall. Ms. Hall was not the final decision-maker regarding employment of teachers at her school, but she submitted hiring recommendations to her superiors.

Ms. Muhammad and a former school board member, Angela Monson, met with Ms. Hall before Ms. Muhammad submitted her application. At the meeting, Ms. Muhammad disclosed her history with the school district, including the fraud allegations and the litigation. Ms. Muhammad was advised that there was no problem in hiring her, and she submitted her application and was interviewed. Ms. Hall then offered her the position, recommending to her superiors that Ms. Muhammad be hired. But Ms. Hall's immediate superior, Karl Springer, informed Ms. Monson that Ms. Muhammad would not be hired, and Ms. Hall admitted to Ms. Monson that she (Ms. Hall) was told that she could not hire Ms. Muhammad due to her history with the school district. Ms. Hall withdrew her recommendation regarding Ms. Muhammad and filled the position with another candidate.

Ms. Muhammad sued the school district and Ms. Hall in state court, alleging that they violated the Oklahoma Constitution by retaliating against her for exercising her right to free speech. When she amended her original complaint to add claims (1) under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment, and

2

(2) under 42 U.S.C. § 1985(2) for conspiracy to injure a party or witness on account of having attended or testified before a federal court, the defendants removed the action to federal court. Ms. Muhammad then filed her second amended complaint, bringing the same federal and state claims against only Ms. Hall in her individual capacity.

The district court granted Ms. Hall's Rule 12(b)(6) motion and dismissed the second amended complaint. It held that Ms. Muhammad had not adequately pleaded a § 1983 claim for First Amendment retaliation because she failed to include sufficient facts to satisfy the elements for non-employer retaliation set forth in *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). It further held that she had not adequately pleaded a claim under § 1985(2) because "[a]lthough two or more persons may have conspired to withdraw [Ms. Muhammad]'s offer of employment, there is no allegation of a meeting of the minds or agreement involving [Ms. Hall]." Aplt. App. at 245. And it held that the claim under the Oklahoma Constitution was precluded by the employee-immunity provision of Oklahoma's Governmental Tort Claims Act (GTCA), Okla. Stat. tit. 51, § 163(C). Ms. Muhammad filed a Rule 59(e) motion, as well as a motion to amend accompanied by a proposed third amended complaint. After the district court denied both of those motions, Ms. Muhammad appealed.

## DISCUSSION

### I.    Rule 12(b)(6) Dismissal

Ms. Muhammad first challenges the dismissal of the second amended complaint. We review a Rule 12(b)(6) dismissal de novo. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 921 (10th Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (brackets and internal quotation marks omitted).

### A.    Section 1983 Claim

Ms. Muhammad's § 1983 claim alleged that Ms. Hall, a non-final decisionmaker, retaliated against her in violation of her First Amendment right to free speech. Under *Worrell*, a plaintiff alleging retaliation by a non-employer must show the following elements:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that

4

activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

219 F.3d at 1212 (internal quotation marks omitted). Focusing on the second and third elements, the district court held that Ms. Muhammad failed to present sufficient facts to plausibly allege that Ms. Hall's actions caused her not to be hired or that Ms. Hall was substantially motivated by Ms. Muhammad's protected activity.

We agree with the district court. Assuming (without deciding) that Ms. Muhammad's reports and prior litigation qualified as constitutionally protected activity, the facts set forth in the second amended complaint show that Ms. Hall was ready and willing to hire Ms. Muhammad, but was prevented from doing so by her superior. Thus, the second amended complaint does not plausibly establish that Ms. Hall caused Ms. Muhammad to suffer an injury or that Ms. Hall was motivated to do so by retaliation.

This court has not yet decided whether a subordinate employee can be liable for First Amendment retaliation when he or she merely acts at the direction of a superior who desires to retaliate. *See Trant v. Oklahoma*, 754 F.3d 1158, 1170 n.5 (10th Cir. 2014) (stating that "[w]e have never held that true subordinate employees may be liable for First Amendment retaliation claims" and declining to decide the issue).[1] Further, the other circuits are not of one mind. *Compare King v. Zamiara*,

---

[1] Ms. Muhammad argues that *Trant*'s dicta is inapplicable because it refers to "true subordinates," 754 F.3d at 1170 n.5, and Ms. Hall would be Ms. Muhammad's superior rather than her subordinate. In the relationship between Ms. Hall and Mr. Springer, however, Ms. Hall is the subordinate.

680 F.3d 686, 696 (6th Cir. 2012) ("Individuals who aid in the implementation of an adverse action at the instructions of a superior will be liable along with their superior if they knew or should have known that the adverse action was unlawful."), *with Johnson v. Louisiana*, 369 F.3d 826, 831 (5th Cir. 2004) ("[O]nly final decision-makers may be held liable for First Amendment retaliation employment discrimination under § 1983.").  Because Ms. Muhammad did not establish the *Worrell* elements, we need not decide the question here.  *See Trant*, 754 F.3d at 1170 n.5.

But this lack of precedent also means that the law is not clearly established, so that Ms. Hall would be entitled to the protection of qualified immunity on this claim.[2] *See Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) ("Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." (internal quotation marks omitted)).

---

Ms. Muhammad also argues that *Trant* cannot supplant earlier circuit decisions recognizing that a subordinate may be liable for retaliation.  *See, e.g., Maestas v. Segura*, 416 F.3d 1182, 1191 (10th Cir. 2005).  But the cases she relies on involve a "cat's paw" theory, where a subordinate engages in retaliation by influencing a superior's decision.  In contrast, this case involves the reverse situation, in which an allegedly retaliating superior acted through a subordinate.  This court has not yet addressed whether the subordinate can be liable in a "reverse cat's paw" situation.

[2] The district court did not decide Ms. Hall's entitlement to qualified immunity, even though the Ms. Hall briefed the issue in her motion to dismiss.  "Our precedent allows us to reach the qualified immunity issue if the parties have had an adequate opportunity to advance their arguments."  *Worrell*, 219 F.3d at 1215.

6

**B.      Section 1985(2) Claim**

The district court dismissed Ms. Muhammad's § 1985(2) conspiracy claim on the ground that "[a]lthough two or more persons may have conspired to withdraw [Ms. Muhammad]'s offer of employment, there is no allegation of a meeting of the minds or agreement involving [Ms. Hall]." Aplt. App. at 245. Ms. Muhammad argues that "it would appear that when the District Court exonerated Ms. Hall on one hand for 'just following orders', it implicitly recognized 'a meeting of the minds'." Aplt. Br. at 13.

"To establish a conspiracy claim under 42 U.S.C. § 1985(2), a plaintiff must prove three elements:  (1) a conspiracy, (2) to deter attendance in court or testimony by force or intimidation or to injure a witness for having appeared in court or testified, and (3) injury to the plaintiff." *Hogan v. Winder*, 762 F.3d 1096, 1113 (10th Cir. 2014). "The first element, a conspiracy, requires the combination of two or more persons acting in concert. A plaintiff must allege, either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants. The conspiracy must be one that has the requisite statutory purpose . . . ." *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994) (brackets, citations, and internal quotation marks omitted).

We agree with the district court that the allegations of the second amended complaint do not plausibly show that Ms. Hall was involved in a "meeting of the minds" for the purpose of retaliation. Rather, as with the § 1983 claim, the allegations indicate that Ms. Hall had no intention of retaliating; she offered

7

Ms. Muhammad the job, and withdrew her recommendation only at the insistence of her supervisor. These facts do not plausibly show a § 1985(2) conspiracy involving Ms. Hall. Further, it does not appear to be clearly established that merely following her superior's directive would make Ms. Hall a conspirator in violation of § 1985(2). Accordingly, Ms. Hall would also be entitled to qualified immunity on this claim.

### C.    Oklahoma Constitutional Claim

The district court dismissed Ms. Muhammad's state constitutional claim under the GTCA's employee-immunity provision, which states, "[i]n no instance shall an employee of the state or political subdivision acting within the scope of [her] employment be named as defendant." Okla. Stat. tit. 51, § 163(C). "Scope of employment" is defined as "performance by an employee acting in good faith within the duties of the employee's office or employment." *Id.* § 152(12). The district court concluded that there were no plausible factual allegations supporting Ms. Muhammad's conclusory assertions that Ms. Hall was acting in bad faith when she withdrew the employment recommendation.

"An employee whose acts are malicious, willful, wanton and in bad faith is not acting in the scope of his employment." *Mustain v. Grand River Dam Auth.*, 68 P.3d 991, 999 (Okla. 2003); *see also Benshoof v. Niles*, 380 P.3d 902, 907 (Okla. Civ. App. 2016). The second amended complaint, however, does not supply any facts to support a plausible inference that Ms. Hall acted maliciously, willfully, wantonly or otherwise so as to place her conduct outside the scope of her employment. And as for lesser conduct, the Supreme Court of Oklahoma recently clarified that reckless

8

disregard "is distinguishable from acts that clearly show malice or bad faith" and "do[es] not automatically rise to a level constituting malice or bad faith." *Gowens v. Barstow*, 364 P.3d 644, 652 (Okla. 2015). Even if the facts described could *perhaps* reach the level of reckless disregard, the second amended complaint does not supply any facts that plausibly show reckless disregard rising to the level of bad faith.

Further, the Oklahoma courts have held that governmental employees who made termination decisions in violation of law or policy were nevertheless acting within the scope of their employment. *See Shepard v. Compsource Okla.*, 209 P.3d 288, 293-94 (Okla. 2009); *Wilson v. City of Tulsa*, 91 P.3d 673, 679 (Okla. Civ. App. 2004). Both *Shepard* and *Wilson* noted that the governmental employers ratified the employees' actions, thereby establishing that the employees acted within the scope of their employment. *Shepard*, 209 P.3d at 290, 293; *Wilson*, 91 P.3d at 678. The fact that the termination decisions violated law or policy did not bring the employees outside the scope of their employment and did not alone establish that the employees acted with malicious intent. *Shepard*, 209 P.3d at 294; *Wilson*, 91 P.3d at 679. "Acting in good faith and using poor judgment are not mutually exclusive and the use of poor judgment does not, without more, exceed the scope of employment." *Wilson*, 91 P.3d at 679.

Here, in moving to dismiss the first amended complaint, the school district (who was then a defendant) asserted that Ms. Hall was acting within the scope of her employment. Aplt. App. at 134-35. This appears to be a ratification of Ms. Hall's conduct, thereby establishing that she acted within the scope of her employment. *See*

9

*Shepard*, 209 P.3d at 293-94; *Wilson*, 91 P.3d at 678. And, as discussed, the second amended complaint does not allege any facts that would plausibly establish malice. *See Shepard*, 209 P.3d at 294; *Wilson*, 91 P.3d at 679. In short, *Shepard* and *Wilson* support affording Ms. Hall immunity under the GTCA.

## II.    Motion to Amend

After the district court dismissed the second amended complaint, Ms. Muhammad filed a Rule 59(e) motion to reopen that would allow her to amend her complaint. She concurrently filed a motion to reopen that attached a proposed third amended complaint. The district court denied the motions, concluding that amendment would be futile. Although we generally review denial of reopening and denial of amendment for abuse of discretion, *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1228 (10th Cir. 2016) (Rule 59(e) motion); *Jones v. Norton*, 809 F.3d 564, 579 (10th Cir. 2015), *cert. denied*, 137 S. Ct. 197 (2016) (motion to amend), we review a determination of futility de novo, *Jones*, 809 F.3d at 579.

Ms. Muhammad's proposed third amended complaint principally added allegations that when the current litigation was in state court, Ms. Hall was questioned and denied that Ms. Muhammad was offered a position, denied that Ms. Hall was aware of Ms. Muhammad's reports of academic fraud, and denied that Ms. Hall acted at the direction or suggestion of any other school official. It further averred that these denials could lead to inferences that Ms. Hall entered into a meeting of minds to retaliate against Ms. Muhammad and took affirmative actions to

10

join a conspiracy against Ms. Muhammad, both by withdrawing the offer and by attempting to cover up the conspiracy.

We consider only the additional facts, not the averments about possible legal inferences therefrom. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. As *Iqbal* explains, "[t]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (citation and internal quotation marks omitted). At best, Ms. Muhammad's additional facts are merely consistent with liability. They therefore stop short of showing a plausible claim for relief against Ms. Hall. And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," dismissal is appropriate because the plaintiff has failed to show entitlement to relief. *Id.* at 679. The district court did not err in denying Ms. Muhammad leave to reopen and to file her third amended complaint.

11

## CONCLUSION

The district court's judgment is affirmed.

Entered for the Court


Timothy M. Tymkovich
Chief Judge