2009 OK 81

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Tom J. WILCOX, Respondent.**

**SCBD No. 5078.**

Supreme Court of Oklahoma.

Nov. 3, 2009.

Loraine Dillinder Farabow, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

William Louis Keel, Oklahoma City, OK, for Respondent.

TAYLOR, V.C.J.

¶1 The Oklahoma Bar Association (OBA) initiated this proceeding under Rule 6 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001 & 2008 Supp., ch. 1, app. 1–A, against Tom J. Wilcox (Respondent) by filing a two-count complaint on June 2, 2005, which it later amended on September 30, 2008. In the amended complaint, the OBA alleges twelve counts of misconduct, with one of the counts containing ten subcounts. The OBA is recommending a private reprimand. The Professional Responsibility Tribunal (PRT) found generally that Respondent had violated the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2001, ch. 1, app. 3–A, and the RGDP and recommended a public reprimand and a one-year probation.[1]

---

1. Because the PRT did not cite to any specific rule of the ORPC and the RGDP, we are unable to determine specially which rules the PRT finds that Respondent violated. The ORPC rules discussed in this opinion can be found in title 5, ch. 1, app. 3–A of the 2001 Oklahoma Statutes (2001 ORPC) and the 2008 Supplement (2008 ORPC). The RGDP rules can be found in title 5, ch. 1, app. 1–A of the 2001 Oklahoma Statutes (2001 RGDP) and the 2008 Supplement (2008 RGDP).

## I. STANDARD OF REVIEW

¶2 Our review in bar disciplinary proceedings is *de novo*. *State ex rel. Okla. Bar Ass'n v. Taylor*, 2003 OK 56, ¶2, 71 P.3d 18, 21. "The ultimate responsibility for deciding whether misconduct has occurred and what discipline is warranted if misconduct is found rests with [this Court] in the exercise of our exclusive original jurisdiction in bar disciplinary matters." *State ex rel. Okla. Bar Ass'n v. Todd*, 1992 OK 81, ¶2, 833 P.2d 260, 262. This Court's duty can only be discharged if the PRT submits a record that will allow an independent determination of the facts and the crafting of an appropriate discipline. *State ex rel. Okla. Bar Ass'n v. Giger*, 2001 OK 96, ¶6, 37 P.3d 856, 860–861. Having carefully perused the record, we conclude it is adequate for *de novo* consideration of the alleged misconduct notwithstanding the numerous shortcomings discussed below.

## II. RECORD BEFORE THE COURT

¶3 In bar disciplinary proceedings, the OBA, as the complainant, has the burden of establishing facts by clear and convincing evidence that the respondent lawyer has violated the rules governing lawyers' conduct. *State ex rel. Okla. Bar Ass'n v. Tweedy*, 2000 OK 37, ¶7, 52 P.3d 1003, 1006. Clear and convincing evidence is sufficient evidence, both in quality and quantity, so as to produce a firm conviction of the truth of the allegations. *See State ex rel. Okla. Bar Ass'n v. Besly*, 2006 OK 18, ¶¶20–25, n. 9, 136 P.3d 590, 598.

¶4 In this case, the OBA relies almost exclusively on the stipulations to meet its burden of proof. The parties' stipulations are not binding on this Court; we review the entire record for clear and convincing evidence in support of the stipulations. *Id.* ¶2, 136 P.3d at 594; *Taylor*, 2003 OK 56 at ¶2, 71 P.3d at 21. Because stipulations are not binding on this Court, the stipulations must be supported by testimonial or documentary evidence to allow a meaningful review. *See Besly*, 2006 OK 18 at ¶¶20–25, n. 9, 136 P.3d

at 598; *Taylor*, 2003 OK 56 at ¶2, 71 P.3d at 21. In order to meet its burden of proof, the OBA generally solicits testimony at the hearing before the PRT or includes documentary evidence in the record which supports the stipulations. *See State ex rel. Okla. Bar Ass'n v. Wilson*, 2008 OK 42, ¶2, 187 P.3d 708, 710; *Besly*, 2006 OK 18 at ¶3, 136 P.3d at 596. When the documentary and testimonial evidence shows conclusively and unequivocally that the stipulations are factually incorrect, this Court will reject the stipulations. *See Besly*, 2006 OK 18, ¶9, 136 P.3d at 596.

¶5 The stipulations here do not contain a statement of stipulated facts, but instead incorporate the allegations, and they are nothing more than Respondent's agreement to the stated allegations in the amended complaint. Many of these allegations are inconsistent with the evidence. They contain significant factual errors as well as erroneous legal conclusions.[2] The numerous unequivocal factual and legal errors in the stipulations here degrade the credibility, and in turn the value, of the remaining stipulations. For this reason, we reject the parties tendered stipulations as establishing the facts.

¶6 In addition to the stipulations, the record here contains Respondent's testimony and a box of exhibits. As to Respondent's testimony, the OBA failed to present evidence to substantiate the allegations by soliciting supporting testimony from the Respondent, but instead it abdicated its role as complainant by shifting the burden of supporting the stipulations onto Respondent's counsel. Were it not for questioning by the PRT many of the facts which direct our decision here would not have been revealed. As to the exhibits, they are unorganized, incomplete, and labeled in such a manner that, for the most part, they are not helpful in deciphering the facts. By submitting the factually and legally incorrect allegations, failing to support the stipulations with documentary and testimonial evidence, and submitting substandard exhibits, the OBA has "unnecessarily complicated our review of this

---

2. Respondent stipulated to the allegations contained in the amended complaint. It is not surprising that Respondent would stipulate to incor-

rect allegations given the length of time that the OBA has taken on this matter and the manner in which the OBA has conducted these proceedings.

case." *Besly*, 2006 OK 18, ¶ 4, 136 P.3d 590.[3] Further complicating our review is the OBA's failure to make legal arguments in its brief to this Court which support the alleged violations.[4] Even through there are deficiencies in the record, it contains sufficient testimonial and documentary evidence for our *de novo* review.

### III. ALLEGED TRUST ACCOUNT VIOLATIONS

¶ 7 The following allegations are found in two counts of the amended complaint.[5] Respondent received checks payable to him, to a client, or to both him and a client. The checks made to Respondent for attorney fees were endorsed by him and were not deposited into a trust account, checks made to Respondent and a client were endorsed by Respondent and not deposited into a trust account, and checks made to a client were not deposited into a trust account. Respondent sent postal money orders made payable to his clients. On one occasion, Respondent met a client at her bank, endorsed a check, and the funds were deposited into an account at the bank. On yet another occasion, Respondent met a client at the Oklahoma State Treasurer's office where a check made to him and a client was cashed with the client receiving his portion of the funds and Respondent receiving his attorney fees and expenses. The OBA did not allege that Respondent held a client's funds, commingled a client's funds, or misused a client's funds in any way. The stipulation is simply that Respondent received checks made to him for attorney fees, to a client, or to him and a client and failed to deposit the checks into a

trust account and that he purchased postal money orders which he sent to clients.

¶ 8 At the hearing, Respondent testified that when he received funds on behalf of a client, he would give the check to the client, either by mail or in person. If the check was made to Respondent or the Respondent and a client, he would endorse the check and give it to the client.[6] Respondent also testified that he would advance funds to his worker's compensation clients for such things as mileage and prescriptions until a final settlement. On several occasions, Respondent met a client, endorsed and cashed a check and distributed the cash to himself for his attorney fee and the remainder to the client. According to Respondent, when he advanced the funds, he would purchase a postal money order with his own money and send it to the client. He testified that he never endorsed a client's name on a check. We find Respondent's testimony at the hearing is convincing evidence of the actual facts.

¶ 9 In addition to the allegations in paragraph seven, the evidence supports the following facts concerning two temporary total disability (TTD) checks Respondent received on Leroy Sadler's behalf. About May 12, 2004, Sadler terminated Respondent as his attorney. Immediately thereafter, Respondent received two of Sadler's TTD checks totaling $1,261.36. Respondent did not notify Sadler of these checks, and Sadler's new attorney first learned Respondent was retaining these checks during the investigation of the grievance. Sadler's new attorney demanded the checks, an accounting, and Sadler's files. Respondent failed to comply with the demand. Because the two checks ex-

---

**3.** We encountered similar problems in *Besly*, 2006 OK 18, 136 P.3d 590, to those encountered here. In *Besly*, the same OBA counsel presented this Court with incorrect factual allegations and stipulations which were not supported by the record, with an allegation of a rule which had not been adopted at the time of the alleged misconduct, and with disorganized and incomplete evidentiary materials.

**4.** The OBA's brief presents few arguments to show how the allegations to which Respondent stipulated constitute a violation of the rules. Instead, the OBA merely states that Respondent stipulated that he violated the ORPC and RGDP. In *State ex rel. Okla. Bar Ass'n v. Bolusky*, 2001

OK 26, ¶ 8, 23 P.3d 268, 272, concerning the legal stipulations, this Court stated: "[S]tipulations of the parties do not control this Court's application of ethical rules to a particular act of lawyer misconduct...."

**5.** In addition to the allegations discussed in this paragraph, Respondent received two temporary total disability checks on behalf of Leroy Sadler. The allegations concerning these two checks are discussed in paragraphs 9 and 12 through 16.

**6.** Respondent testified that he did not collect his worker's compensation attorney fees from the monthly payments but that he collect these attorney fees from the final settlement of the claim.

pired while in Respondent's custody, the worker's compensation court judge ordered that they be reissued.

7. Rule 1.15(a) of the 2001 ORPC and 2008 ORPC provides:

A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

Rule 1.15(b) of the 2001 ORPC, in effect at the time of the alleged misconduct, provided:

Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

When the amended complaint was filed on September 30, 2008, Rule 1.15(b) of the 2008 ORPC, which became effective on January 1, 2008, provides:

A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account but only in an amount necessary for that purpose.

Rule 1.15(c) of the 2001 ORPC, in effect at the time of the alleged misconduct, provided:

When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

When the amended complaint was filed, Rule 1.15(c) of the 2008 ORPC, which became effective on January 1, 2008, provides:

A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred."

Rule 1.15(e) of the 2008 ORPC is substantially the same as Rule 1.15(c) of the 2001 ORPC.

The OBA has failed to disclose which version of Rule 1.15(b) and (c) that it alleges Respondent violated causing this Court to have to address both versions. If the OBA is alleging that Re-

■■ ¶ 10 The OBA posits that this conduct shows Respondent violated Rule 1.15(a), (b), and (c)[7] of the ORPC and Rule 1.4[8] of spondent violated the 2008 version in effect at the time the complaint was filed, it is actually advocating that Respondent should have violated Rule 1.15(b) of the 2008 ORPC by depositing his own funds in his trust account above that allowed by this rule, which would also be a violation of the 2001 ORPC Rule 1.15(a) prohibiting commingling. We do not believe that this is what the OBA intended, and we cannot find Respondent violated the Rule 1.15(b) of the 2008 ORPC.

There is no allegation or evidence that Respondent received advances in legal fees or expenses such that he was required by Rule 1.15(c) of the 2008 ORPC to deposit them in a trust account. Thus the OBA has failed to show that Respondent violated the Rule 1.15(c) of the 2008 ORPC. The OBA is admonished to specifically state in the complaint and in its brief which rules it alleges a lawyer has violated. Because of the absurdity of charging Respondent with violations of Rule 1.15(b) and (c) of the 2008 ORPC under the facts presented here, Respondent has not complained, and we discern no prejudice to Respondent, we address in detail whether these allegation violate Rule 1.15(b) and (c) of the 2001 ORPC. *Todd*, 1992 OK 81 at ¶ 3, 833 P.2d at 262.

At the hearing, the OBA counsel admits that the IOLTA (Interest on Lawyer's Trust Accounts) provisions of the rules do not apply to Respondent's alleged misconduct which occurred before their effective date in May of 2004. However, this is of no help in deciphering which version of Rule 1.15(b) and (c) as well as other rules which were amended between 2002 when the first alleged misconduct occurred and 2008 when the amended complaint was filed.

8. Rule 1.4(a) and (b) of the 2001 RGDP, in effect at the time of the alleged relevant misconduct, provides:

(a) All members of the Bar who are required under the Oklahoma Rules of Professional Conduct, Rule 1.15, to maintain a trust account for the deposit of clients' funds entrusted to said attorney, shall do so and furnish evidence thereof as hereinafter provided. The Executive Director of the Oklahoma Bar Association shall annually mail a card to each lawyer requesting the name of the bank or banks in which the lawyer carries any trust account, the name under which the account is carried and the account number. Provision will be made on the card for a response by lawyers who do not maintain a trust account and the reason for not maintaining said account. Lawyers shall have thirty days from the receipt of said inquiry to respond. Information received by the Association as a result of such inquiry shall remain confidential unless a

the RGDP.[9] Rule 1.15(a) of the ORPC requires a lawyer who **holds** funds of a client in connection with representation to keep those funds segregated from the lawyer's own funds in an account known as a trust account. The purpose of Rule 1.15(a) is to require the same care of a lawyer when holding client funds as that of a professional fiduciary. ORPC, R. 1.15 cmt. The germane definition of "hold" is "[t]o keep; to retain; to maintain possession of or authority over." American Heritage Dictionary 657–658 (2nd College ed.1982). Except for the two TTD checks which are discussed later, there is no evidence that Respondent held clients' funds such that he was required to deposit them in a separate trust account. Rather, the evidence is that Respondent received checks

grievance is filed against a lawyer which, in the opinion of the Professional Responsibility Commission, may warrant disciplinary action in regard to the handling of said trust account. Failure of any lawyer to respond giving the information requested will be grounds for appropriate discipline.

(b) Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or set-off for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services.

A substantively similar provision to Rule 1.4(a) of the 2001 RGDP is codified at Rule 1.15(g) of the 2008 ORPC. A substantively similar provision to Rule 1.4(b) is codified at Rule 1.15(f) of the 2008 ORPC and provides:

Where funds or other items of property entrusted to a lawyer have been impressed with a specific purpose as to their use, they shall retain that specific character unless otherwise authorized by a client or third person or prohibited by law. Where funds are impressed with a specific purpose, a lawyer may not subject them to a counterclaim, set off for fees, or subject them to a lien.

9. The OBA asserts that by the alleged conduct Respondent violated the mandatory provisions of Rule 8.4(a), (b), (c), and (d) of the ORPC and Rule 1.3 of the RGDP. Rule 8.4 of the 2001 ORPC, in effect at the time of the alleged misconduct, provides:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a government agency or official; or

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

The 2008 amendment to Rule 8.4 only changed section (e) which provides: "state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law."

This rule does not by itself mandate a lawyer's conduct but defines professional misconduct for which discipline is appropriate. All of the definitions of professional misconduct are prohibited by other rules governing lawyers' conduct or other rules are incorporated by reference into the definition of professional misconduct. Subsection (a) incorporates the Rules of Professional Conduct; subsection (b) is governed by Rule 7.1 of the 2001 and 2008 RGDP as well as other rules; subsection (c) is governed by Rules 1.4, 3.3, 4.1, 8.1, and 8.2 of the 2001 and 2008 ORPC; subsection (d) is governed by Rules 3.1 through 3.6 of the 2001 and 2008 ORPC; subsection (e) is governed by the same rules that govern subsections (b), (c), and (d); and subsection (f) incorporates the Code of Judicial Conduct, 12 O.S.2001, ch. 2, app. We find no bar disciplinary proceeding, and the OBA cites to none, where this Court has found a violation of Rule 8.4 independent of a violation of a specific rule.

Rule 1.3 of both the 2001 and the 2008 RGDP provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

Rule 1.3 does not mandate lawyer conduct. Rule 1.3 subjects a lawyer to discipline for a violation of rules mandating lawyer conduct.

Count VIII, entitled Breach of the Peace, alleges violations of Rule 8.4 of the ORPC and 1.3 of the RGDP without alleging a violation of any specific rule of misconduct. For the reasons discussed here, we do not find Respondent violated these rules as alleged in Count VIII of the amended complaint and need not further discuss the violations of these rules as alleged in other counts.

from insurers; signed checks made jointly to him; and mailed the checks to the respective client or met with the client, cashed the check, and divided the cash.

¶ 11 Turning to the postal money orders, Respondent testified that these were purchased with his own money as advances for mileage, prescriptions, and similarly related medical expenses for which the client was entitled to reimbursement. We find nothing in the Rule 1.15 of the 2001 ORPC which requires that an attorney deposit his own funds in his trust account before advancing funds, and the OBA fails to explain how Respondent's actions in this regard violate Rule 1.15 of the ORPC.

■ ¶ 12 As to the two TTD checks which Respondent retained and on which he claimed a lien, Respondent retained them until the time had expired for their negotiation. Respondent unquestionably held these checks under Rule 1.15(a) of the 2001 ORPC. Rule 1.15(b) of the 2001 ORPC required that "[u]pon receiving funds in which a client ... has an interest, a lawyer shall promptly notify the client...." Respondent admits and the evidence supports a finding that Respondent did not timely notify Sadler when he received the two checks.

¶ 13 Rule 1.15(c) of the 2001 ORPC required: "When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests." The Workers' Compensation Court found that Respondent had a recognizable lien on the workers' compensation proceeds, that the available funds were insufficient to fully satisfy the competing liens, and that Respondent had "advanced claimant sums in the amount of $704.61 for prescription medicine and there [was] no evidence said amount was reimbursed by [Sadler]." The same order also found that Respondent was entitled to $2,529.00 in attorney fees. Under the Worker's Compensation Court's order, the total to

which Respondent had a claim from the funds represented by the checks was $3,233.61. Contrary to the Worker's Compensation Court's order, the OBA takes the position in its brief that Respondent had no claim to the funds represented by the two TTD checks. The OBA did not provide clear and convincing evidence that Respondent did not rightly claim an interest in the funds represented by the two TTD checks.

¶ 14 Having found that the OBA did not provide evidence that Respondent did not rightly claim an interest in the funds represented by the two TTD checks, we turn to Rule 1.5(c) to determine if he was required to hold them in a trust account. While Rule 1.15(a) of both the 2001 and the 2008 ORPC requires a lawyer to hold a client's funds in a trust account, there is no such provision in Rule 1.15(c) of the 2001 ORPC, which deals specifically with property in which the lawyer claims an interest. Rather, Rule 1.15(c) of the 2001 ORPC required that client funds be kept separate from the lawyer's. Further, the comments to Rule 1.15 of the 2001 ORPC, in effect at the time of Respondent's alleged misconduct, provided: "If there is risk that the client may divert the funds without paying the fee, the lawyer is not required to remit the portion from which the fee is to be paid." Thus, as we construe Rule 1.15 of the 2001 ORPC, Respondent was not specifically required to remit the two TTD checks and was not required to hold them in a trust account. In compliance with Rule 1.15(c) of the 2001 ORPC, Respondent kept the two checks separate from his own property. Thus, we do not find that the OBA proved by clear and convincing evidence that Respondent violated Rule 1.15(c) of the 2001 ORPC.

■ ¶ 15 The OBA also posits that Respondent violated Rule 1.4 of the RGDP [10] by retaining the two TTD checks.[11] Rule 1.4(b) of the 2001 RGDP required a lawyer who has been entrusted with money or other property for a specific purpose apply it to that purpose. Under this rule, a lawyer could not

---

10. See *supra* note 8.

11. The OBA did not state in either the amended complaint or its brief which sections of Rule 1.4

of the ORPC it was alleging Respondent violated. We address section (b) first and then section (a).

apply his client's money which was designated for a specific purpose to his fees. Under Rule 1.4(b) of the 2001 ORPC, a lawyer had to account for and deliver such money upon demand, and failure to do so would constitute a conversion. This rule provided an exception if the lawyer had a valid lien on the money or property for his services. The OBA fails to address the specific purpose impressed on the funds here or whether Respondent had a valid lien on the funds as found by the Worker's Compensation Court. The funds here were funds in which the lawyer and the client both claimed an interest and were governed by Rule 1.15(c) of the 2001 ORPC as funds in which the lawyer claimed an interest, which we addressed in the previous paragraph. They were not funds governed by Rule 1.4(b) of the 2001 ORPC.

¶ 16 This construction is consistent with the 2008 version of Rule 1.4(b) of the 2001 RGDP. With some changes in language, including the deletion of the language creating a conversion when property impressed with a specific purpose is not used for such purpose, Rule 1.4(b) of the 2001 RGDP was renumbered as Rule 1.15(f) of the 2008 ORPC.[12] Comment 4A to Rule 1.15(f) further clarifies the rule is not meant to govern funds such as the two TTD checks.[13] The comments state Rule 1.15(f) commonly involves funds entrusted to a lawyer by a client or other depositor for payment to a third party on the depositor's behalf. Comment 4A continues that examples of funds are funds for the payment of taxes or litigation expenses, for the down payment on the purchase of property, and for use as an offer of

settlement in a pending dispute. The OBA has failed to present clear and convincing evidence that Respondent violated Rule 1.4(b) of the 2001 RGDP in the manner that he handled the two TTD checks.

## IV. ALLEGED REPORTING VIOLATIONS UNDER RULE 1.4(a) OF THE RGDP

 ¶ 17 Rule 1.4(a) of the RGDP[14] requires members of the OBA who are required to maintain a trust account under Rule 1.15 of the ORPC to also furnish evidence of the account to the OBA. Under Rule 1.4(a), the OBA is to mail a card annually to each lawyer requesting information about the trust account and to provide a place on the card for a lawyer who does not maintain a trust account to so state and to give the reason why. The OBA maintains that on the statement of dues for 2002, 2003, and 2004, Respondent incorrectly certified: "I do not receive or disburse client's funds and therefore do not maintain a trust account."

¶ 18 A violation of 1.4(a) of the 2001 RGDP occurs only if a lawyer is required to maintain a trust account under Rule 1.15 of the 2001 ORPC. As previously discussed, Rule 1.15 requires a lawyer to hold clients' and third-parties' property separate from the lawyer's own property and these funds are to be kept in a trust account. Having found the OBA has failed to prove that Respondent "held" any client or third-party funds except for the two TTD checks which he received after May 11, 2004, we address only the allegations of a violation of rule 1.4(a) of the

---

12. See *supra* note 8.

13. Comment 4A to Rule 1.15 of the 2008 ORPC provides:

> With respect to paragraph (f), where the lawyer receives funds or other property for the execution of some purpose specifically pointed out, the lawyer is not, as in the case of a simple trust, a passive depository. The lawyer is required to use the funds or other property to carry out the expressed intentions of the client or other depositor. This commonly involves funds or other property being entrusted to a lawyer specifically for payment to a third party on behalf of the client or other depositor. Examples include funds entrusted to the lawyer specifically for the payment of client's taxes, or

> for the payment of litigation expenses, or to be tendered as an offer of settlement in a pending dispute, or to be tendered as a down payment on a contract to purchase property. If the lawyer is unable to carry out the stated intentions of the client or other depositor, the funds or other property must be returned to the depositor unless otherwise instructed or unless the law provides otherwise. The lawyer is not free to unilaterally change the purpose of the funds or other property which may not be applied for the lawyers own purposes or for any other purpose.

14. See *supra* note 8.

2001 RGDP as they relate to the two TTD checks.

¶ 19 OBA dues for 2004 were due on January 2, 2004. Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S.2001, ch. 1, app. 1, art. VIII, § 1. If Respondent had not paid his 2004 dues by February 15, 2004, he would have been subject to suspension from the practice of law. *Id.* § 2. There is no allegation or evidence that Respondent failed to timely pay his 2004 dues. Thus, his certifications of the trust account occurred before May 11, 2004, when Respondent received the two TTD checks. Further, this Court's records do not show that he was suspended in 2004 for non-payment of dues. The OBA failed to prove by clear and convincing evidence that Respondent wrongly certified that he was not required to maintain a trust account in 2002, 2003, or 2004.

## V. ALLEGED VIOLATIONS OF RULE 1.16(d)

■ ¶ 20 The record shows that after Sadler terminated Respondent as counsel, Sadler retained Albert Wheeler III to represent him. The OBA and Wheeler made demands on Respondent for the two TTD checks, for Sadler's files, and for an accounting. Respondent refused these requests. Because of Respondent's refusal to provide the files and an accounting, the settlement negotiations were compromised.

¶ 21 The OBA alleges that based on these allegations, Respondent violated Rule 1.16(d) of the ORPC.[15] Rule 1.16(d) requires, upon termination of representation, a lawyer must protect the client's interest by, among other things, "surrendering papers and property to which the client is entitled[, except] the lawyer may retain papers relating to the client to the extent permitted by law." The comment to Rule 1.16 provides that a "lawyer may retain papers as security for a fee only to the extent permitted by law." Respondent does not argue and there is no evidence in the record which would support a finding that Respondent was permitted by law to retain Sadler's files after being dismissed. We find Respondent violated Rule 1.16(d) of the ORPC by retaining Sadler's files after he was discharged.

## VI. ALLEGED VIOLATIONS OF RULE 8.1(b) OF THE ORPC AND 5.2 OF THE RGDP

■ ¶ 22 The following facts are gleaned from the documentary evidence tendered in support of the allegations. In a letter to Wilcox dated July 20, 2004, the OBA notified Respondent that Leroy Sadler had filed a grievance against him, and the OBA requested a response. Because the grievance was not a part of the record,[16] we can only conjure the complaints contained therein. On August 12, 2004, the OBA sent Wilcox a second letter and requested a response. Both of these letters were mailed to Wilcox's official OBA roster address, a post office box in Midwest City.[17]

¶ 23 On August 23, 2004, Wilcox was subpoenaed for a deposition regarding the grievance. Wilcox then contacted the OBA, spoke with the investigator, and learned of the OBA's letters. Wilcox asked for a week to respond to the grievance and for the deposition to be rescheduled. Wilcox's request for additional time was denied. On August 30, 2004, Wilcox sent the OBA a detailed response with documentation. It was received in the OBA's office on September 1, 2004. Nonetheless, on September 8, 2004, the OBA's counsel took Wilcox's deposition. At

---

**15.** Rule 1.16(d) of the 2001ORPC, with the addition of "or expenses" in the 2008 ORPC included in parenthesis, provided:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee (or expenses) that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

**16.** The record does not contain a copy of the grievance. Although the OBA's letter to Wilcox (Exhibit 3) indicates one was attached thereto, it is not attached to Exhibit 3 and is not part of Wilcox's response to the OBA's letter (Exhibit 9) as indicated by the Exhibit List.

**17.** The post office box was closed for unpaid rent, but mail began posting to the box on July 23, 2004, after the rent was paid.

the deposition, Wilcox produced the original records regarding Sadler's case, refused to let the OBA make copies, and agreed to provide the OBA with copies of Sadler's file. In response to several questions, Respondent stated:

> In correspondence with the general counsel, there has been a full and fair disclosure of all facts and circumstances relating to the grievance of Mr. Sadler.
>
> I decline to answer this question on the grounds that the answer might disclose matters that would tend to show me guilty of an act or an offense that would be grounds for discipline." [18]

¶ 24 On September 13, 14, 15, and 23 of 2004, Wilcox mailed copies of Sadler's client files, including medical records and bills, to the OBA. He notified the OBA that with the mailing of the copies and the OBA's counsel's remarks regarding the lack of additional questions, he did not plan on attending the deposition set for September 16, 2004. The OBA had told Respondent that if he provided the records before September 15, he would not need to appear and testify at the deposition.

¶ 25 The OBA alleges that by this conduct, Respondent has violated Rule 8.1(b)of the

ORPC [19] and Rule 5.2 of the RGDP. [20] The OBA's argument, as stated in its brief to the Court, is that Respondent violated these provisions "by failing to provide a full and fair disclosure of relevant facts to the Office of the General Counsel during their their [sic] investigation of Sadler's grievance and Respondent's handling of funds entrusted to him during his representation of his client."

¶ 26 The complaint does not contain a factual allegation that Respondent did not make a fair and full disclosure, and we find no place in the record that Respondent stipulated to the fact. Further because the grievance is not part of the record, it is difficult to be certain if Respondent made a full and fair disclosure of the relevant facts. However, his response to the OBA's request for information is a detailed document which appears complete. The OBA has failed to show that Respondent did not make a full and fair disclosure in his response.

¶ 27 The OBA seems to base its alleged violation of Rule 8.1(b) of the ORPC and Rule 5.2 of the RGDP on Respondent's refusal to answer questions in the deposition based on the right against self-incrimination. [21] The United States Supreme Court in

---

**18.** On several occasions in the deposition, OBA counsel questioned Respondent if he was asserting Rule 6.11 of the RGDP or was asserting the Fifth Amendment to the United States Constitution. We note that Respondent was not asserting a Rule 6.11(d) privilege but was clearly asserting his rights against self-incrimination. Rule 6.11 deals with the "Powers of Trial Panel in conduct of proceedings," and Respondent was in a deposition.

**19.** Rule 8.1(b) of the 2001 and 2008 ORPC provides:

> [A] lawyer ... in connection with a disciplinary matter, shall not ... knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure or information otherwise protected by Rule 1.6.

**20.** Rule 5.2 of the 2001 and 2008 RGDP provides:

> After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete, or insufficient to warrant the fur-

ther attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

**21.** Respondent had provided answers in his response to many of the OBA's questions posed in the deposition.

*Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), addressed a similar issue-whether a lawyer could be disbarred solely for exercising his Fifth Amendment right under the United States Constitution in a judicial inquiry for professional misconduct. The Court noted "that the Self–Incrimination Clause of the Fifth Amendment was applicable to the States by reason of the Fourteenth," *id.* at 513, 87 S.Ct. 625 (citing *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)), and its protection extends to lawyers. *Id.* at 514, 87 S.Ct. 625. The Self–Incrimination Clause, applicable to state action by the Fourteenth Amendment, guarantees a person the right " 'to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty' " as a result. *Id.* (quoting *Malloy*, 378 U.S. at 8, 84 S.Ct. 1489). A penalty is a sanction which makes assertion of the right against self-incrimination costly. *Id.* at 515, 87 S.Ct. 625 (citing *Griffin v. State of California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)). The Court stated: "The threat of disbarment and the loss of professional standing, professional reputation, and of livelihood are powerful forms of compulsion to make a lawyer relinquish the privilege." *Id.* at 516, 87 S.Ct. 625. The Court found "no room in the privilege against self-incrimination for classifications of people so as to deny it to some and extend it to others." *Id.* The Court refused to allow the exercise of the privilege against self-incrimination to be used as a basis for discipline in a bar disciplinary proceeding. Based on *Spevack*, we refuse to discipline Respondent for violating Rule 8.1(b) of the ORPC or Rule 5.2 of the RGDP for exercising the privilege against self-incrimination.

¶ 28 It is unquestioned, and the evidence supports a finding, that Respondent did not file his response within the twenty-day period as required by Rule 5.2 of the RGDP. Thus we find that Respondent's reply to the OBA's request for information was out of time.

## VII. ALLEGATIONS OF ABUSE OF PROCESS

### A. Dewey County District Court Cases CV–2005–14, CV–2005–46, CV–2005–52 and the Related Appeals [22]

¶ 29 The facts as gleaned from the record before this Court, this Court's own records,[23] and the Court of Appeals' opinion are as follows. Respondent filed three lawsuits against the town of Seiling, the Seiling Board of Trustees (Board) members, and Matt Sander. The first was filed on March 17,

**22.** This chart is included for purposes of reference in dealing with CV–2005–14, CV–2005–46, CV–2005–52.

| District court (DC) number and date filed | CV-2005-14<br>March 17, 2005 | CV-2005-46<br>Sept. 2, 2005 | CV-2005-52<br>Oct. 11, 2005 |
|---|---|---|---|
| Date of DC order on the merits | Aug. 3, 2006 | April 11, 2006 | April 11, 2006 |
| Supreme Court (SC) number on appeal from the merits & date filed | 103,737<br>Sept. 6, 2006<br>(mailed) | 103,337<br>May 11, 2006 | 103,338<br>May 11, 2006 |
| Date of appellate disposition on the merits (Court of Civil Appeals (COCA)) | COCA<br>April 11, 2007 | COCA<br>Jan. 4, 2007 | COCA<br>Jan. 4, 2007 |
| Date of DC order on sanctions/attorney fees/costs | Jan. 30, 2007 | Jan. 4, 2007 | Jan. 4, 2007 |
| SC number on appeal from sanctions/attorney fees/costs and date filed | 104,367<br>March 2, 2007<br>(mailed) | 104,277<br>Feb. 5, 2007<br>(mailed) | 104,278<br>Feb. 5, 2007<br>(mailed) |
| Date of dismissal of appeal from sanctions/attorney fees/ costs | July 13, 2007 | July 13, 2007 | July 13, 2007 |

**23.** This Court may take judicial notice of its records. *Cotner v. Golden*, 2006 OK 25, ¶ 10, 136 P.3d 630, 633. The OBA did not include the district court records in the record now before this Court. The OBA is admonished to include any court records on which it relies, including

2005 (CV–2005–14); the second was filed on September 2, 2005 (CV–2005–46); and the third was filed on October 11, 2005 (CV–2005–52). The three lawsuits stem from actions taken by the Board and the Seiling Planning/Zoning Commission (Commission) in rezoning property owned by Sander.[24]

¶ 30 Sander moved a manufactured home onto a residentially-zoned lot in Seiling in November of 2004. The home's location did not comply with the zoning requirements in that it was too close to another structure. Then, Sander applied for a zoning variance and paid the $100 fee. The Seiling Town Administrator recommended that Sander apply to have the property rezoned to commercial. The Commission approved the rezoning request on February 28, 2005. The Board approved the rezoning application on March 14, 2005. The Commission and Board also approved Sander's building permit application. On March 17, 2005, Respondent filed suit in the Dewey County District Court against Seiling, Sander, and Board members in case number CV 2005–14. Respondent alleged that the Board had not followed the law in rezoning the property and that the property did not qualify as commercial property. On January 3, 2006, the district court granted summary judgment in favor of some of the defendants and, on April 11, 2006, denied Respondent's motion to vacate. On August 3, 2006, the district court granted summary judgment in favor of Sander. On September 6, 2006, Respondent filed his appeal of the summary judgment in CV–2005–14 with this Court (appellate number 103,-737).

¶ 31 Before judgment was entered in CV–2005–14 and because of discrepancies in the first rezoning process, the Administrator, at the Board's direction, initiated a second rezoning process on July 18, 2005. On August 8, 2005, the Commission and the Board both approved the second rezoning. On September 2, 2005, Respondent filed a petition in CV–2005–46 asking the district court for a writ of mandamus or writ of prohibition ordering the Board to rescind its actions taken on August 8, 2005, in regard to the rezoning.

¶ 32 On September 12, 2005, the Board confirmed the second rezoning, declared an emergency so that the rezoning ordinance was immediately effective. On October 11, 2005, Respondent filed a petition in CV–2005–52 asking for a writ ordering the Board to rescind the actions taken on September 12, 2005, concerning the rezoning.

¶ 33 On April 11, 2006, the district court entered judgment against Respondent in both CV–2005–46 and in CV–2005–52. On May 11, 2006, Respondent filed appeals in CV–2005–46 (appellate number 103,337), and in CV–2005–52 (appellate number 103,338). This Court consolidated these two appeals with a surviving number of 103,337. Then on November 7, 2006, the Court of Civil Appeals issued an opinion affirming the trial court's judgment on the merits and finding a writ was unavailable to Respondent because he had an adequate remedy at law and finding he had failed to show that he had standing to litigate the issue. On January 4, 2007, the Court of Civil Appeals issued an order in 103,337 (consolidated with 103,338) awarding attorney fees and costs against Respondent and remanding the case for a *"Burk"* hearing.[25]

¶ 34 In the mean time on October 5, 2006, this Court ordered appeal number 103,737 be made a companion with the other two appeals. On April 11, 2007, the Court of Civil Appeals issued its opinion in appeal number 103,737. In this opinion, the Court of Civil Appeals affirmed the district court's judg-

this Court's records, in the record of bar disciplinary proceedings.

24. There is some indication that Sander did not own the property but rented it.

25. The OBA incorrectly alleged that the Court of Civil Appeals upheld the trial court's finding that the "suits were frivolous and affirmed the lower court's order of sanctions." The OBA also alleged that Respondent appealed the cases to this Court who ordered the first case be combined with the other two and incorrectly that this appeal "was dismissed on September 24, 2007 by the Oklahoma Supreme Court due to Respondent's failure to file a brief-in-chief upon the Court's request." The OBA fails to mention that there were appeals taken from the district court judgment on the merits and separate appeals were taken from the order of sanctions and/or attorney fees which were dismissed for failure to file a brief in chief.

ment and found Respondent lacked standing to bring the rezoning issue before the court.

¶ 35 Seiling and the Board filed motions seeking attorney fees in the district court in CV–2005–46 and in CV–2005–52. On January 4, 2007, in separate orders, the district court found that the claims asserted by Respondent in the two cases were frivolous as defined by title 12 section 2011.1 [26] The district court entered judgment against Respondent in CV–2005–46 in the amount of $4,325.72 and in CV–2005–52 in the amount of $2,725.72. Then on January 30, 2007, the district court found that Sander was an unnecessary party in all three cases and entered judgment against the defendant in the amount of $1,520.00 in CV–2005–14. The district court order does not state any statutory authority for awarding attorney fees in CV–2005–14. Respondent appealed the three orders awarding attorney fees, and the three appeals from the order of sanctions and/or attorney fees were given appellant numbers 104,277 (CV–2005–46); 104,278 (CV–2005–52); and 104,367 (CV–2005–14).

¶ 36 This Court ordered these three appeals from the attorney fee awards to be made companion cases. Respondent's briefs in chief were due on July 13, 2007. As discussed later in this opinion, about this time Respondent became seriously ill and was hospitalized. In September of 2007, these three appeals were dismissed for failure to timely file the briefs in chief. These three appeals were never before the Court of Civil Appeals; and, contrary to the OBA's allegations and the stipulations, the Court of Civil Appeals did not affirm "the lower court's order of sanctions." [27]

### B. Dewey County District Court Case CV–2006–28

¶ 37 The facts gleaned from the record and a Court of Criminal Appeals' order are as follows.[28] On May 5, 2006, Respondent filed a petition for a writ of mandamus in the Dewey County District Court, case number CV–2006–28. The district court filed an order "dismissing" the case as to one defendants on October 4, 2006, and granted attorney fees against Respondent in that defendant's favor. On December 27, 2006, the district court filed an order "dismissing" the case as to the remaining defendants. On November 3, 2006, Respondent filed an application to assume original jurisdiction and for a writ of mandamus in the Court of Criminal Appeals, case number MA–2006–1174. On December 15, 2006, the Court of Criminal Appeals filed an order denying the petition for writ of mandamus, finding that Respondent had an adequate remedy at law by way of appeal. On January 9, 2007, Respondent re-filed the December 27, 2006 order and, on January 25, 2007, filed a notice of intent to appeal with the Oklahoma Court of Criminal Appeals, appellate case number M–2007–71. On May 8, 2007, the Court of Criminal Appeals dismissed the appeal as filed out of time. The order dismissing the appeal noted that Respondent could not "revive the time limitation for filing his appeal simply by having a copy of the District Court's order re-filed at a later point."

26. Title 12, section 2011.1 of the 2004 Supplement to the Oklahoma Statutes, effective November 1, 2004, provides:

In any action not arising out of contract, the court shall, upon granting a motion to dismiss an action or a motion for summary judgment or subsequent to adjudication on the merits, determine whether a claim or defense asserted in the action by a nonprevailing party was frivolous. As used in this section, "frivolous" means the action was knowingly asserted in bad faith, was unsupported by any credible evidence, was not grounded in fact, or was unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law. Upon so finding, the court shall enter a judgment ordering such nonprevailing party to reimburse the prevailing party for reasonable costs, including attorney fees, incurred with respect to such claim or defense. In addition, the court may impose any sanction authorized by Section 2011 of Title 12 of the Oklahoma Statutes.

27. At paragraph 147 of the amended complaint, the OBA states: "After reviewing the matter, the Court of Civil Appeals upheld the trial court's finding that Respondent's suits were frivolous and affirmed the lower court's order of sanctions."

28. Because the OBA did not include the Court of Criminal Appeals' order in the record but relied on it as proof of the alleged misconduct, we take notice of the order.

658

## C. RULE 1.1 OF THE ORPC

¶ 38 The OBA contends that Respondent has violated Rule 1.1 the ORPC. Rule 1.1 of the 2001 ORPC deals with a lawyer's duty to the client. It provides: "A lawyer shall provide competent representation to a client." Throughout the ORPC, the term client is treated as a person separate from the lawyer. For example Rule 1.2 requires that a lawyer abide by the client's decisions and refrain from counseling a client to engage, or assist a client in criminal conduct, and Rule 1.4 requires a lawyer to keep a client reasonably informed. It is inane to construe the term "client" to include oneself. While as the adage goes "a lawyer representing himself has a fool for a client," we do not agree that Rule 1.1 imposes a duty to provide competent representation to oneself when acting as a *pro se* litigant.

## D. RULE 3.1 OF THE ORPC

¶ 39 The OBA also alleges that Respondent violated Rule 3.1 of the ORPC. From the amended complaint, the OBA appears to advocate a *per se* rule that a finding under title 12, section 2011.1 requires a finding of a violation of Rule 3.1 of the ORPC. Section 2011.1 allows a court, upon the finding that an action not arising out of contract was frivolous, to enter an order for reasonable costs, including attorney fees, against the nonprevailing party.[29] Rule 3.1 of the 2001 ORPC provides:

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

¶ 40 The dissimilarities of section 2011.1 and Rule 3.1 purposes, the nature of the proceeding, the repercussions, and the burden of proof require us to examine whether an attorney has violated Rule 3.1 even if a lower court has imposed sanctions under title 12, section 2011.1 of the Oklahoma Statutes. Section 2011.1 is a means by which a court can shift the attorney fees in litigation to an opposing party; Rule 3.1 is a rule enacted for the protection of the public and the reputation of the legal profession. Section 2011.1 is a civil proceeding; whereas, a bar disciplinary proceeding for a violation of Rule 3.1 is quasi-criminal. The repercussions for frivolous filings under section 2011.1 are monetary, but, under Rule 3.1, range from a loss of a professional reputation up to loss of a professional license. The burden of proof under section 2011.1 is a preponderance of the evidence; the burden of proof under Rule 3.1 is clearing and convincing evidence. *See Shephard v. CompSource Okla.*, 2009 OK 25, ¶ 6, 209 P.3d 288, 291–291; *Besly*, 2006 OK 18 at ¶¶ 20–25, n. 9, 136 P.3d at 598; *Johnson v. Bd. of Governors of Registered Dentists*, 1996 OK 41, ¶¶ 17–26, 913 P.2d 1339, 1345–1348 (discussing the burdens of proof in different types of proceedings). Thus, this Court will examine the facts *de novo* to determine whether the a lawyer has violated Rule 3.1.

¶ 41 Respondent filed CV–2005–14 against Seiling and others for failing to follow proper procedures and the law when it approved the ordinance rezoning the property on which Sander had moved his manufactured home. Apparently as a result of the first case being filed, Seiling enacted a second ordinance rezoning the same property and then reaffirmed this second ordinance. Respondent filed cases number CV–2005–46 and CV–2005–52 before a final ruling in the first case (CV–2005–14). Had Respondent failed to file the last two cases, he would have risk losing the right to litigate the rezoning. Given that the Court of Civil Appeals decision in appellate number 107,277 and 107,278 (district court cases CV–2005–46 and CV–2005–52 respectively) were rendered in one opinion and before its decision in appellate number 107,737 (CV–2005–14), we cannot agree that Respondent violated Rule 3.1 of the ORPC in regards to CV–2005–46 and CV–2005–52. Further, the district court in

---

29. See *supra* note 26.

awarding attorney fees in CV–2005–14 found only that Sander was not a necessary party, and there is nothing in the facts presented by the OBA which would lead to a finding that Respondent violated Rule 3.1 of the ORPC by actions taken in CV–2005–14.

¶ 42 As to case number CV–2006–28, Respondent may have pushed the limits of zealous advocacy when he re-filed the district court's order. *See* ORPC, R. 1.3 cmt. Standing alone, re-filing a judgment does not violate the ORPC. Further, we do not find Respondent's action in filing an appeal in CV–2006–28 out of time was frivolous for purposes of Rule 3.1 of the ORPC.

## VIII. THE ALLEGATIONS CONCERNING DISTRICT COURT JUDGE

### A. FACTS

¶ 43 Two counts involve facts arising from an incident in the Dewey County Court Clerk's office. The facts here are taken from the record, including a video tape, and this Court's records.[30] On August 2, 2006, a district court judge (the Judge) in Dewey County was holding an *in camera* hearing on a search warrant in the court clerk's office. Respondent entered the office with his video camera in record mode and panned the room with the camera. The Judge approached Respondent, put his hand over the camera lens, and, using profanity in an abusive tone, told Respondent to turn off the camera and get out of the "courtroom." Respondent replied that it was not a courtroom but was the clerk's office. The Judge responded that it was a courtroom because he was conducting a hearing.

¶ 44 Respondent then left the clerk's office and waited in the hall. When the hearing was completed, Respondent entered the clerk's office again with the camera in record mode. Several times, the Judge told Respondent to turn off the camera and quit recording. Each time, Respondent asked for

a written order, and the Judge responded, "I will get you a written order." During this time, Respondent asked for a court reporter for a hearing for the next week on an arraignment. Having apparently misunderstood, the Judge questioned Respondent on whether he wanted a reporter for a hearing on the order prohibiting his filming in the clerk's office. After only a few moments, Respondent stopped recording.

¶ 45 After Respondent filed a civil action against the Judge for assault, direct contempt charges were filed against Respondent. The trial court found Respondent in direct contempt and fined him $400.00. On November 13, 2006, Respondent filed an appeal with this Court.[31] Because Respondent failed to file a brief in chief, this Court dismissed the appeal on September 27, 2007, not November 28, 2007, as the OBA states.

### B. RULE 3.5(d) OF THE ORPC

¶ 46 The OBA alleged that this conduct violated Rule 3.5(d) of the ORPC. Rule 3.5(d) states that "[a] lawyer shall not ... engage in conduct intended to disrupt a tribunal." The comments to Rule 3.5 of the ORPC state: "A lawyer may stand firm against abuse by a judge but should avoid reciprocation...." When Respondent entered the clerk's office, he could not have anticipated a judge would be holding a confidential *in camera* hearing in a public place. The Judge immediately began using profanity in ordering Respondent from the clerk's office. Respondent left immediately and did not re-enter the clerk's office until the *in camera* hearing was completed. The evidence shows that Respondent stood firm but did not reciprocate with profanity and did not use an abusive tone when replying to the Judge. We do not find that Respondent intended when he entered the clerk's office the first time to disrupt a tribunal nor did Respondent disrupt a tribunal when he reentered the clerk's office after the hearing's completion.

---

30. The OBA's allegations are inconsistent with the facts gleaned from the documentary evidence, and we find no need to recite the false allegations here.

31. The appeal was given number 103,972. The OBA incorrectly states that the appeal number is CJ–06–04.

## C. RULE 3.1 OF THE ORPC

¶ 47 In the civil suit, Respondent alleged that the Judge "grabbed the [Respondent] about his right arm and pushed the video camera ... away from plaintiff's face." The district court granted the Judge's motion to dismiss and awarded the Judge $600.00 in attorney fees pursuant to title 12, section 2011.1 of the 2001 Oklahoma Statutes. Respondent appealed and the case was assigned to the Court of Civil Appeals. The Court of Civil Appeals affirmed the district court's order, and Respondent petitioned for certiorari, which this Court denied.[32]

¶ 48 The OBA alleges that this conduct violates Rule 3.1 of the ORPC. In conducting an independent review, we turn to case law, particularly *North Side State Bank v. Bd. of County Comm'rs*, 1994 OK 34, 894 P.2d 1046, and *Gregory v. Thompson*, 500 F.2d 59 (9th Cir. Ct. Appeals 1974), to determine whether the civil suit filed by Respondent had a basis in law and fact, including "a good faith argument for an extension, modification or reversal of existing law."

¶ 49 *North Side State Bank* discussed the doctrine of judicial immunity in the context of a court clerk's actions. This Court recognized that a judicial officer is not liable for actions taken in an adjudicative capacity; stated that "[a]n official's immunity depends largely upon the nature of the act"; and defined a purely judicial act as "one done by a member of the judicial department in construing the law or applying it to a particular state of facts." *North Side State Bank*, 1994 OK 34 at ¶ 12, n. 13, 894 P.2d at 1050–1051, n. 13. Under *North Side State Bank*, Respondent had a good faith argument that the Judge was not acting in his judicial capacity when he physically ejected Respondent from the court clerk's office, and, thus, that the doctrine of judicial immunity did not protect the Judge from liability.

¶ 50 *Gregory* discussed in detail whether the doctrine of judicial immunity was applicable when a judge physically ejected a person from a courtroom. In *Gregory*, a judge claimed absolute immunity from suit brought under title 42, section 1983 of the United States Code. Although Respondent did not allege a violation of section 1983 by the Judge, the *Gregory* court's reasoning on the issue of judicial immunity is germane to the OBA's allegations here. In *Gregory*, a judge had personally removed the plaintiff from the courtroom. The court acknowledged that it was a judge's obligation to protect the dignity of the courtroom and that the judge could exercise the court's criminal contempt power, which is judicial in nature, to maintain decorum in a courtroom. *Gregory*, 500 F.2d at 64. The court continued that there may be times when it is necessary for a judge to use physical force for such purpose, but the necessity does not mean that the judge is absolutely immune from suit. *Id.*

¶ 51 Looking at the nature of using physical force to remove someone from a courtroom, the *Gregory* court reasoned:

> The decision to personally evict someone from a courtroom by the use of physical force is simply not an act of a judicial nature. A judicial act within the meaning of the doctrine may normally be corrected on appeal. But when a judge exercises physical force in a courtroom, his decision is not amenable to appellate correction. More importantly, we cannot believe that the purpose of the judicial immunity doctrine—to promote "principled and fearless decision-making" will suffer in the slightest if it is held that judges who physically assault persons in their courtrooms have no automatic immunity.

*Id.* at 64 (citations omitted).

¶ 52 The *Gregory* court noted that the judge could have summoned a sheriff to remove the plaintiff from the courtroom, and if a sheriff had assaulted the plaintiff, the sher-

32. Justice Opala, with whom Justice Kauger joined, wrote:

> Even though using summary process for according the defendant-judge immunity from suit may at first blush appear error-free, it was clearly **impermissible as contrary to statute summarily to impose upon the plaintiff-lawyer** the **§ 2011.1 liability for sanctions.** This error should be corrected by remanding the case for an adversarial evidentiary hearing to assess the extent and merit of the interposed good-faith defenses as well as to readjudicate the plaintiff's liability, if any, for § 2011.1 sanctions.

iff would not have been absolutely immune but could have asserted the defense that he was acting in good faith. *Id.* at 64–65. The judge's "choice to perform an act similar to that normally performed by a sheriff or bailiff should not result in his receiving absolute immunity for this act simply because he was a judge at the time." *Id.* at 65. The *Gregory* court concluded that the judge was entitled only to a defense of qualified immunity and that the judge was required to show that he was acting in good faith. *Id.*

¶ 53 Certainly under *North Side State Bank* and *Gregory,* Respondent's suit against the Judge was based "in law and fact ... including a good faith argument" that the Judge was not immune from suit but entitled only to qualified immunity for which the Judge would have been required to show that he was acting in good faith. *See Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Thus, we do not find that Respondent's actions in filing suit against the Judge were frivolous for purposes of Rule 3.1 of the ORPC.

## IX. FALSE STATEMENTS TO THE COURT

¶ 54 In the amended complaint, the OBA alleges that in July of 2006, Respondent intentionally made false statements in testimony before a court in violation of Rule 4.1 of the ORPC.[33] At the hearing, the OBA moved that Count VII be dismissed. Other than the stipulations, there is no evidence supporting this count. The PRT, to the extent of its authority, granted the motion to dismiss Count VII. In the OBA's brief to this Court, it attempts for the first time to assert Respondent's testimony was a simple error, rather than an intentional act as it had argued, which Respondent failed to correct in violation of Rule 3.3(a)(1) of the ORPC.

¶ 55 For three reasons, the OBA's request for discipline under Rule 3.3(a)(1) is not well taken. First, Rule 3.3(a)(1) at the time of the alleged misconduct, July of 2006, provided: "A lawyer shall not knowingly ... make a false statement of fact or law to a tribunal." In support of its position the OBA cites to the amendment to Rule 3.3(a)(1) which became effective on January 1, 2008, "after the alleged misconduct."[34] The OBA in its brief states the "testimony may have been given in simple error" and, under 3.3(a)(1), Respondent had a duty to correct the error. "Simple error" is insufficient to constitute knowledge under Rule 3.3(a)(1) of the 2001 ORPC, and we will not find Respondent violated a rule enacted after the alleged misconduct. *Besly,* 2006 OK 18 at ¶¶ 34–35, nn. 17–18, 136 P.3d at 602–603.

¶ 56 Second, this Court will not entertain allegations first alleged in the OBA's brief to this Court-in this case that Respondent failed to correct a "simple error." Due process requires a lawyer charged with professional misconduct must be given notice of the charges in a timely manner. *Id.* at n. 18, 136 P.3d at 603, n. 18.

¶ 57 Third, Respondent did not stipulate that he had committed a simple error which he failed to correct. This allegation was not part of the amended complaint to which Respondent stipulated. The OBA presented absolutely no proof of this allegation which first appeared in its brief to this Court. This Court will not discipline a lawyer for violation of a rule which was not in effect at the time of the alleged misconduct, where the factual and legal allegations appear for the first time in the OBA's brief to this Court, and where

---

**33.** Rule 4.1 of the 2001 ORPC, which has not been amended, provides:

In the course of representing a client a lawyer shall not knowingly:
(a) make a false statement of material fact or law to a third person; or
(b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.

**34.** The OBA cites to the to Rule 3.3(a)(1) of the 2008 ORPC which provides:

A lawyer shall not knowingly ... make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer....

there is not even a scintilla of proof of the allegation.

## X. RECKLESS AND FALSE STATE-MENTS CONCERNING A JUDICIAL CANDIDATE

¶ 58 In a letter opposing a candidate for Associate District Judge of Dewey County, Respondent questioned the candidate's ethics because the candidate had filed a campaign form after the deadline. Even though, the form had been filed after the deadline, it was filed only after receiving consent and approval from election officials. In the letter, Respondent also asserted that the candidate had terminal cancer. While it was true that the candidate had cancer, it was not true that the cancer was terminal. The letter was mailed to voters less than a week before the election. The OBA alleges that this conduct violates Rule 8.2(a) of the ORPC.

¶ 59 Rule 8.2(a) prohibits a lawyer from making a false statement about a judicial candidate with knowledge or with reckless disregard of the statement's truth. The record supports a finding that Respondent made false statements about the candidate's ethics and physical condition, and Respondent admits that he should have investigated the truth of the allegations before making the statements. This conduct violates Rule 8.2(a) of the ORPC.

## XI. THE SANDERSON CASE

¶ 60 The OBA alleges that, in 2007, Kandy Sanderson and Respondent entered into a contract for his representation for two worker's compensation claims. The OBA alleges that the parties have conflicting claims disputing the extent of the representation. There is no evidence, including stipulations, which resolves this dispute. The OBA then alleges that Respondent filed a Form 3, the form which initiates a worker's compensation proceeding, on one claim but not on the other. Respondent did not contact the insurance company but directed Sanderson to communicate with the insurance company directly. Between July 3, 2007, and August 1, 2007, while Respondent was hospitalized as discussed below, Sanderson unsuccessfully tried to contact him. On August 2, 2007, Sanderson terminated Respondent's representation of her. Sanderson, acting *pro se,* settled her claim on September 5, 2007. Respondent filed a lien on the settlement funds and sued Sanderson for $3,616.56, twenty percent of the settlement. Sanderson's lawyer in the civil suit sent Respondent discovery requests but Respondent did not comply with any of the request.

¶ 61 The OBA alleges Respondent violated Rules 1.1, 1.3, 1.4, 1.5,[35] and 1.16 of the ORPC. In its brief, the OBA posits that these rules were violated because "Respondent took no steps to advise his client of his illness or inability to handle her legal affairs and neglected her cases [which she] eventually settled . . . of her own accord." Because we cannot ascertain the extent of Respondent's representation, we cannot determine if he was neglectful before his illness. As to notifying Sanderson of his illness, it appears from the record that Respondent's medical condition would have prevented him from advising her that he would be unable to handle her legal affairs. Based on these facts and the lack of evidence, the OBA has failed to prove by clear and convincing evidence that Respondent violated Rules 1.1, 1.3, 1.4, or 1.16 of the ORPC.

¶ 62 Rule 1.5 of the 2001 ORPC required a lawyer to charge a reasonable fee and failure to do so could have resulted in discipline under Rule 8.4(a) of the ORPC and Rule 1.3 of the RGDP. In contention with ORPC Rule 1.5 is RGDP Rule 1.4(b) which provides: "Controversies as to the amount of fees shall not be considered a basis for charges in a disciplinary proceeding unless it is made to appear that the amount demanded is extortionate or fraudulent." It appears from the record that the civil suit filled by Respondent against Sanderson is still pend-

---

35. Rule 1.5 of the 2001 ORPC, in effect at the time of the alleged misconduct, provided: "A lawyer's fee shall be reasonable...." The OBA cites to and relies on the version which became effective on January 1, 2008. Rule 1.5 of the 2008 ORPC provides: "A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses...."

ing. This Court will not interfere in a pending civil suit by finding a fee is unreasonable in a bar disciplinary proceeding.

## XII. ENHANCEMENT

¶ 63 In 1997 in *State ex rel. Okla. Bar Ass'n v. Wilcox*, 1997 OK 87, 942 P.2d 205, this Court suspended Respondent, Tom J. Wilcox (Wilcox), from the practice of law for one year for commingling client funds and for endorsing a doctor's name on a settlement check without authorization.

## XIII. RESPONDENT'S MEDICAL COMPLICATIONS

¶ 64 In July of 2007, Respondent was admitted to the hospital with a hemorrhage in his brain. He was seriously ill, remained in the hospital for about a month, and was discharged on August 11, 2007. Some of the court documents which he failed to timely file were due while he was hospitalized. The OBA admits that some of Respondent's behavior may be attributed to this health problem. However, there is no evidence in the record as to when this medical condition began and the extent of which it may have affected Respondent's behavior. The OBA asks this Court to consider the possibility that this condition was a factor in Respondent's misconduct when determining the appropriate discipline.

## XIV. DISCIPLINE

¶ 65 We have found Respondent has violated (1) Rule 1.15(b) of the 2001 ORPC, by failing to notify his client of the two TTD checks, (2) Rule 1.16(d) of the 2001 ORPC, by failing to surrender the client's files and to give an accounting after he was terminated, and (3) Rule 8.2(a) of the 2001 ORPC, by recklessly making a false statement about a judicial candidate, and (4) the Rule 5.2 of the 2001 RGDP by failing to file his response to the OBA's request for information within the twenty day required period. All other charges are dismissed. We recognize that Respondent was previously disciplined for commingling. It appears that Respondent has learned from the previous discipline and the alleged facts show that he was in fact

handling his client's funds in a way to avoid commingling. Although there is no evidence of the extent to which Respondent's medical condition contributed to his misconduct, it is reasonable that it may have influenced his behavior near the time of his hospitalization, and Respondent's illness is certainly responsible for his failure to return Sanderson's calls and to timely file some of the briefs in chief in the appeals during his hospitalization.

¶ 66 As stated previously, the PRT recommended a public reprimand, while the OBA recommends a private reprimand. The OBA fails to cite to any authority for its recommendation of a private reprimand, *see Wilson*, 2008 OK 42 at ¶ 29, 187 P.3d at 716, and it is difficult to understand this recommendation given the extent and seriousness of all of the OBA's allegations.

¶ 67 The goal of discipline is to maintain the integrity of the profession and the judicial system and to protect the public and the courts. *State ex rel. Okla. Bar Ass'n v. Peveto*, 1980 OK 182, ¶ 20, 620 P.2d 392, 395. Punishment is not the goal of lawyer discipline. *Id.*

¶ 68 In *State ex rel. Okla. Bar Ass'n v. Patterson*, 2005 OK 76, 125 P.3d 1202, the lawyer filed a case for a client but his efforts to obtain service were less than adequate, failed to respond to his clients requests, failed to surrender the client's files when the client terminated the representation, and failed to timely respond to the OBA's request for information. For this misconduct, this Court found that public censure was the appropriate discipline. The professional misconduct in *Patterson* is similar to the misconduct that we find here. Considering the allegations which the OBA has proven by clear and convincing evidence, we find the appropriate discipline here to be a public reprimand.

## XV. COSTS

¶ 69 The OBA has submitted an application to assess costs in the amount of $1,842.02. While there is no statutory authority for assessing attorney fees against the OBA in a disciplinary proceedings, we

find that the manner in which the OBA has litigated this matter warrants a denial of costs. First, the OBA took four years to litigate this matter. Some of the delay is justified; some is not. Second, the OBA asserted violations of rules which were not in effect at the time of the alleged misconduct, asserted violations of rules which are not supported by the alleged facts, asserted violations of rules for which it submitted no evidence, misstated facts which are shown to be incorrect by a simple review of this Court's records, presented an deplorable record to this Court, sent requests for information to Respondent with only a Worker's Compensation form 3 attached to show a violation of the rules to which he was required to respond, provided a brief to this Court which is without substantive argument but relies on Respondent's stipulation that his conduct violated the ORPC and RGDP, and abandoned its responsibility to present clear and convincing evidence to Respondent's attorney. Third, we do not find the OBA has proven a majority of the charges by clear and convincing evidence. For these reasons, the OBA should not be rewarded with reimbursement of its costs.

## XVI. CONCLUSION

¶ 70 We find Respondent has violated Rules 1.15(b), 1.16(d), and 8.2(a) of the 2001 ORPC and Rule 5.2 of the 2001 RGDP. We also find that the appropriate discipline is a public reprimand and so order. The OBA's application for costs is denied.

**RESPONDENT PUBLICLY REPRIMANDED; APPLICATION FOR COSTS DENIED.**

¶ 71 TAYLOR, V.C.J. and HARGRAVE, OPALA, KAUGER, COLBERT, REIF, JJ., concur.

¶ 72 WATT, J., concurs in part, dissents in part.

¶ 73 EDMONDSON, C.J. and WINCHESTER, J., dissent.

¶ 74 WATT, J., concurring in part, dissenting in part, and joined by EDMONDSON, C.J.

I would impose a period of suspension from the practice of law upon this respondent.